(March 19, 1889.)

WASHINGTON AND IDAHO RAILWAY COMPANY v. NORTHERN PACIFIC RAILWAY COMPANY.

[21 Pac. 658.]

LANDS GRANTED TO NORTHERN PACIFIC RAILWAY COMPANY BY CONGRESS—LAW CONSTRUED.—Section 3 of the act of Congress of July 2, 1864, provides: "That there be and thereby is granted to the Northern Pacific Railroad Company (for the purpose of securing the construction of a railroad and telegraph, etc.) every alternate section of public land, not mineral, designated by odd numbers, to the amount of twenty alternate sections per mile on each side of said railroad line as said company may adopt, . . . . free from pre-emption of other claims or rights at the time the line of said road is definitely fixed and a plat thereof filed in the office of the commissioner of the general land office," etc. *Held,*

to be a grant *in praesenti*, and to vest in the company an equity in the lands, subject to be defeated, however, on noncompliance with terms of the grant.

Act of Congress of March 3, 1875.—*Held*, also, that lands included in such grant are not within the operation of the act of March 3, 1875, granting the right of way to railroads, etc.

APPEAL from District Court, Shoshone County.

Woods & Heyburn, for Appellant.

The language of the act under which the plaintiff claims its grant reads: "That the right of way over the public lands of the United States is hereby granted to any railroad company, etc." Public lands within the meaning of the act are those lands the title of which remains in the United States. They are termed public lands, because all the people of the country have an interest in them. The fact that they are temporarily reserved from sale does not affect their character as public lands. (*Bouldin v. Phelps,* 30 Fed. 554, 555.) The title remains in the United States until the conditions imposed are all complied with. (*United States v. Taylor,* 35 Fed. 486; *Bouldin v. Phelps,* 30 Fed. 547; *Northern Pac. R. R. v. Traill Co.,* 115 U. S. 600, 6 Sup. Ct. Rep. 201.) "The grant being inchoate, the valid legal title still remains in the government. Where the case remains *sub judice,* the legal title cannot pass out of the United States, and the United States stands in an impregnable position on that legal title, even though such title be held by the United States for those having the equitable title to the lands." (*Bouldin v. Phelps,* 30 Fed. 554, 555, 558, 564; *Estrada v. Murphy,* 19 Cal. 271; *Malarin v. United States,* 1 Wall. 290; *United States v. Taylor,* 35 Fed. 486.) It is the settled law of the land that these acts cannot be questioned in a collateral proceeding, but must stand as valid and binding upon all of the world until the grant is set aside by the court in an action commenced in the name of the United States for that express purpose. (*Steel v. Smelting Co.,* 106 U. S. 451, 1 Sup. Ct. Rep. 389; *Kemp v. St. Louis Smelting Co.,* 104 U. S. 636.)

J. H. Mitchell, Jr., and Albert Hagan, for Respondent.

Same as in 21 Pac. 658.

BERRY, J.—This case comes into this court on appeal from a judgment entered in favor of the defendant upon an order sustaining a demurrer to the complaint.   Stripped of all minor questions, and which are not essential to the case, the main issue, and that on which all else in the case depends, is as to which party is entitled to the possession of certain parts of sections 25 and 27, in township 49 north, of range 1 east, of Boise meridian, in Shoshone county.   The plaintiff claims a right of way for its road through them, under the act of March 3, 1875.   It claims to have fulfilled all the conditions of that act, and compliance with all the rules and regulations of the land department of the United States; and that since the third day of November, 1886, it was and is entitled to all the benefits of the act of March 3, 1875, whatever those rights may be.   The complaint demands judgment, declaring the company's ownership of a right of way for the plaintiff's road on and over these two sections of land with right of possession, etc.   The defendant, on its part, claims both of these sections, under the land grant to the Northern Pacific Railroad Company by act of Congress, July 2, 1864.   The lands are a part of the public domain, and subject to the operation of the act under which the plaintiff claims, unless they are removed from the operation of that act by the grant previously made to the defendant.   The act of Congress of March 3, 1875, grants to railroad companies complying with its conditions the right of way over the public lands of the United States, except such lands be contained within "any military, Indian, or park reservation, or the lands shall be otherwise specially reserved from sale."   The case made by the plaintiff shows its right to a right of way over the lands, providing the defendant has not a prior claim.   It is contended by the defendant that the odd sections "within the forty-mile limit" of its grant are not "public lands," within the meaning of the act of March 3, 1875, but that they are private property, granted to the defendant for certain purposes, specified in the granting act, and in which the defendant, prior to the act of 1875, had a vested right.   In support of this claim the defendant cites section 3 of the granting act to the defendant, of July 2, 1864, providing "that there be, and hereby is, granted to the Northern Pacific Railroad

Company [for certain specific purposes in the act declared] every alternate section of public land, not mineral, designated by odd numbers, to the amount of twenty alternate sections per mile, on each side of said railroad line, as said company may adopt, . . . . free from pre-emption, or other claims or rights, at the time the line of said road is definitely fixed, and a plat thereof filed in the office of the commissioner of the general land office," etc.

Whether this act did or did not vest in the defendant a present property in these lands, which would become absolute as of the time its plat of route should be filed, against pre-emption or other claims arising after the date of the act, has been the subject of some discussion in the courts, and the decisions, at first view, are apparently conflicting. We think this supposed conflict is more apparent than real, and arises chiefly from changed circumstances under which the same and similar acts have from time to time been considered. The policy of the United States with reference to the public lands has ever been to retain their primary disposal exclusively to itself. With that exclusive control it will allow no interference, either by state or territorial governments, nor by any means which itself does not institute and put in motion; and we are cited to no case, and know of no case, where the government of the United States has ever allowed the public lands to be made subject to taxation and sale for taxes, under state or territorial laws, so long as it for any purpose holds the title. Improvements on public lands may be taxed, and often are taxed, as personal property, and sold for taxes, but the soil, never. The reason is obvious. A departure from this rule will not be presumed for reasons less than a plain declaration by Congress of such intent. There is no such intent expressed in this grant, and the intent will not be implied as against the government. (*Railroad Co. v. United States,* 92 U. S. 733.) What the company may do, in pursuance of the expressed object of the grant, in the sale and transfer of equities in lands, whether earned and title perfected, or the equities still inchoate, is quite another thing.

For reasons satisfactory to Congress, under a clear right reserved in the government to do so, and by express provision of

the act of July 15, 1870, the title to these lands has been retained in the government; and it will not, except through the authorized acts of the grantee, done in pursuance of the objects of the grant, and on full compliance by it, with its obligations to government, part with the legal title to the property granted. The making of these lands subject to taxation by territories or states was not one of the expressed objects of this grant. Its purpose was not to expose it to confiscation, but to devote it to the building of a railroad and telegraph line from Lake Superior to the Pacific. To do that, means were prescribed by Congress by which the company might mortgage its franchises and property, including these lands, to raise money for that purpose; but to allow the lands to be encumbered by taxation would at once raise a barrier to the object for which the grant was made, and tend, at least, to defeat its real purposes. Any presumption that Congress intended, by putting these lands in the hands of the company, practically in trust with a beneficial interest in the trustee, for a specific purpose, to subject them to immediate taxation, as soon as the line of the road should be established, or even as soon as the lands should be earned by the completion of the road, or any section of the road, would necessarily lead to the most serious and absurd consequences; and if we were to look no further than the original grant, with its expressed object and intent, with the known uniform policy of the government, in having no partner in the primary disposal of its soil, such a decision as that of *Northern Pac. R. R. Co. v. Traill Co.,* 115 U. S. 601, Sup. Ct. Rep. 201, might *Co. v. Traill Co.,* 115 U. S. 601, 6 Sup. Ct. Rep. 201, might son given for that decision. That was based on the fact that the government had a lien on all such lands for the cost of surveying, selecting and conveying the same, which cost the grantees were to pay, and in default of which payment the government might be obliged to retake or redispose of the lands. The interest of the road in the lands is not such an interest as to subject the lands to territorial taxation, and so that case decides. But it does not follow from anything in that case that the beneficial interests of the company in the grant are any less, or any different, from that implied in the obvious meaning of the words of the statute, taken with other por-

tions of the granting act, and the act of July 15, 1870, reserving this power in the government. In construing the act, the nature of the trust, the character and relations of the grantor to the property granted, its rights secured by holding the title, its uniform policy and practice in avoiding complications in the primary disposal of its lands, and the detailed statement of the object of the grant itself, must not be overlooked. Subject to these specified conditions, it seems clear that the conclusion arrived at in *Buttz v. Railroad Co.,* 119 U. S. 55, 7 Sup. Ct. Rep. 100, must be taken as the true rule, in defining the estate and interest of the defendant in the lands so granted. Other cases define it quite as explicitly. In that case the court holds that the land in controversy, "and other lands in Dakota, through which the Northern Pacific was to be constructed, was within what is known as 'Indian country' at the time the act of July 2, 1864, was passed. The title of the Indian tribes was not extinguished, but that fact did not prevent the grant of Congress from operating to pass the fee of the land to the company. The fee was in the United States. The Indians had merely a right of occupancy—a right to use the lands, subject to the dominion and control of the government. The grant conveyed the fee subject to this right of occupancy, and the railroad company took the property with this encumbrance." There is no question of "encumbrance" here; hence there was nothing to be "removed" before the rights of the company attached. The court declares that the company "took the property." The counsel cites on this point, *Schulenberg v. Harriman,* 21 Wall. 44, which case fully sustains this view; also *Railroad Co. v. United States,* 92 U. S. 733; *Missouri etc. Ry. Co. v. Kansas Pac. Ry. Co.,* 97 U. S. 491; *Railroad Co. v. Baldwin,* 103 U. S. 426—all of which cases, considered with reference to their particular circumstances, appear consistent with *Northern Pac. R. R. Co. v. Traill Co.,* cited above, and no reason appears to question the correctness of their conclusions.

It is not necessary to inquire as to which of the excepted classes of lands, named in the act of 1875, includes the sections in question in this action, or whether they are in either class. The United States had already granted these lands, subject, of course, to the reservations and conditions of the act of July

2. 1864, and to the requirements of the act of July 15, 1870, hereafter mentioned, when the act of March 3, 1875, was passed. It is admitted in the complaint that the sections of land here in question are now "within the forty-mile limit" of the defendant company; and from the complaint, which was demurred to, it is not apparent that they were not within such limit at any time. It is not pleaded that any previous location of the defendant's road had been definitely made, so as to leave these sections out of that limit, on the 3d of November, 1886, at which time full compliance with the act of 1875 was completed by the plaintiff; and the plaintiff became entitled to its right of way over government lands under that act, and we cannot look into the maps submitted, which are not a part of the complaint, nor indeed altogether consistent with each other, for the discovery of a fact of which the face of the complaint does not give notice. Undoubtedly, if such were the fact when the right of the plaintiff attached, and a change in the defendant's line was made afterward, so as to include these sections, and it were so stated, such fact would demand attention. But such is not the condition of this case.

We see nothing in the point taken under the act of Congress of July 15, 1870, "that while the cost of surveying, selecting, and conveying the lands granted to a railroad remains unpaid, the legal title of the lands remains in the United States; that the cost of surveying the land is a condition precedent to the right to receive the title from the government"; and that in such case the equities of the defendant are extinguished or impaired, as claimed under the authority of *Railroad Co. v. Mc-Shane,* 22 Wall. 444. The act, under reserved power to amend and modify the grant, merely imposes another condition precedent to the government's obligation to patent the lands, to wit, that certain costs of survey, selection and conveyance shall be paid. It goes no further, and we think this retention of title in the United States must be considered as a holding of the naked, legal title only, retained, primarily, at least, as security for the cost of surveying, selecting and conveying the lands, but leaving the equities of the company in the lands themselves entirely intact. Such, if we understand them, is the view taken by Judges Field and Deady in *United States v.*

*Ordway,* 30 Fed. 35. It is apparent, therefore, that the defendant had a vested interest and property in this land, prior and superior to any claim of the plaintiff under the act of March 3, 1875. The judgment in this action should be affirmed.