[No. 1303.]

THE STATE OF NEVADA, Respondent, *v.* THE CENTRAL PACIFIC RAILROAD COMPANY, A CORPORATION, Appellant.

Railroad Companies—Land Grants—State Taxation—Act of Congress July 10, 1886, Construed.—In construing the act of Congress of July 10, 1886, providing "for taxation of railroad grants, lands, and for other purposes," *Held,* that Congress delegated to the states and territories the right to tax the lands granted to railroad companies, though the latter had not paid the cost of surveying and selecting such lands.

Idem—Act of Congress July 1, 1862, Construed—Grant in Præsenti. —The words "that there be and is hereby granted" contained in section three of the act of Congress of July 1, 1862, are words of absolute donation, and import a grant *in præsenti.* Such words vest a present title in the grantee.

IDEM—COLLECTION OF TAXES—DELAY IN PROCURING PATENTS—NEGLECT OF
SECRETARY OF INTERIOR—CHARACTER OF LANDS — JURISDICTION OF
COURTS.—The right of the state to collect taxes upon the lands embraced
in the grants to the C. P. R. R. Co., cannot be defeated by the delay of
the corporation in applying for patents, nor by the neglect or delay of the
secretary of the interior to take proper steps to determine the character
of the land—whether mineral or non-mineral. The identification of the
land and its character, if raised by the pleadings, could be determined in
the state court upon the trial of the case.

IDEM — ACTION TO RECOVER DELINQUENT TAXES — DENIAL IN ANSWER —
INSUFFICIENCY OF ANSWER. In an action to recover delinquent taxes on
unpatented lands an averment in the answer "denying all ownership
* * * except such as the defendant may have, obtain, or secure, as
yet unknown and uncertain on account of the non-action of the govern-
ment through its land department" is evasive and uncertain, raises no
issue, and is not such an averment as the defendant is permitted to make
under the provisions of our statute. (Gen. Stat. 1103.)

APPEAL from the District Court of the State of Nevada, Washoe
County.

R. R. BIGELOW, District Judge.

The facts are stated in the opinion.

*Baker & Wines,* for Appellant.

I.  Discussed at length the objects and purposes in view,
which gave rise to the grants to the Pacific railroads; the dis-
tinctions between actions of the character now before the court
and those in which the court have most generally announced
the doctrine that "grants" said to be similar to the one now
under discussion are "grants *in præsenti,*" and contend that the
character of this action is such that the appellant has personal
interest in the result, very clearly distinguishable from an
action to enforce a lien for taxes upon lands to which the rail-
road company may never obtain title.

II.  An examination of the acts of 1862 and 1864 will de-
termine what the intention of Congress must have been, the
extent of the grant, and what limitations and exceptions have
been adopted, with a view of fully protecting the public domain,
and at the same time secure all the advantages which the gov-
ernment expected to realize from the consummation of so great
a work. (*St. Joseph etc. R. R. Co.* v. *Baldwin,* 103 U. S. 426; *Mis-*

*souri Pac. R. R. Co.* v. *Kansas P. R. R. Co.*, 97 U. S. 491; *Leavenworth L. & G. R. R. Co.* v. *United States*, 92 U. S. 733; *Denny* v. *Dobson*, 32 Fed. Rep. 899; *Central Pacific R. R. Co.* v. *Dyer*, 1 Saw. 641; *Kansas Pac. R'y Co.* v. *Prescott*, 16 Wall. 603; *Union Pac. R'y Co.* v. *McShane*, 22 Wall. 444; *Northern Pac. R. R. Co.* v. *Traill County*, 115 U. S. 600; *Courtright* v. *Cedar Rapids & M. R. R. Co.*, 35 Iowa, 386; *Sioux City & St. P. R. Co.* v. *County of Osceola*, 43 Iowa, 318; *Dickinson* v. *Yetzer*, 53 Iowa, 681; *Newhall* v. *Sanger*, 92 U. S. 761.)

Our position is that the grant of 1862 and 1864, as clearly shown by the language used, and the limitations and restrictions incorporated into it, does not convey or pass a *present legal title*. That a *legal title* can only pass from grantor to grantee, so far as it has its inception in the grant in question, by patent. That when such legal title has been so conveyed, it relates back to the date of the grant, and in this way the rights of the grantee are fully secured and protected. That neither does such grant pass a *present, perfect, equitable* title by force of its own provisions; but the title thus secured ripens into a perfect, equitable title the moment it can be said that *nothing* remains to be done by either grantor or grantee, save and except the mere ministerial act of issuing a patent. Most clearly is that true, where the *act to be done by the grantor is one* which determines the status and character of the land; *one* which is in the nature of an *estoppel* upon the government, so far as its title is affected. That until such title reaches the dignity of that perfect, equitable character indicated, such lands are not, in our judgment, subject to taxation. That so long as these lands, have not been "set apart," "set off," "located" or "entered," as contemplated by the grant, and as expressly required by its terms, there yet remains *that* to be done which is necessary to a complete segregation of those excluded from those included in the grant. The doing of the *things* thus required of the government determines and fixes the status of the "subject-matter" of the grant, and either establishes or defeats the right of taxation.

III. A review of the authorities bearing upon this question and especially of those mainly relied upon by the taxing power, will demonstrate that the latter do not disturb the position assumed by appellant upon this appeal. (*Rutherford* v. *Green's Heirs*, 2 Wheat. 196; *Schulenberg* v. *Harriman*, 21 Wall. 44;

*Denny* v. *Dobson*, 32 Fed. Rep. 899; *Langdeau* v. *Hanes*, 21 Wal. 521; *Tarpey* v. *Deseret S. Co.*, Utah, Feb., 1888, 17 Pac. Rep. 631.)

IV.  By the very constitution of the various divisions into which the powers of government are divided, the authority of determining all questions involving the disposal of public domain is primarily vested in that department first required to take cognizance of such disposal. After the government has parted with its title, and the same has become vested in some one of its citizens, the courts are clothed with the exclusive authority to hear and determine all subsequent questions touching such title. (*French* v. *Fyan*, 93 U. S. 169; *Kerman* v. *Griffith*, 27 Cal. 87; *Hess* v. *Bolinger*, 48 Cal. 349; *Dilla* v. *Bohall*, 53 Cal. 709; *Powers* v. *Leith*, 53 Cal. 711; *Gale* v. *Best*, 78 Cal. 235; 12 Am. St. Rep. 44; *Cowell* v. *Lammers*, 10 Saw. 246; *Southern Pacific R. R. Co.* v. *Dull*, 10 Saw. 506.)

John F. Alexander, Attorney General, for Respondent.

The corporation since July 10, 1886, has such an interest, title or claim as is taxable under our statute. (*Witherspoon* v. *Duncan*, 4 Wall. 218; U. S. Stat. 1885–86, p. 143.) There is nothing in *Carroll* v. *Safford*, 3 How. 441, or *Kansas Pac. Ry. Co.* v. *Prescott*, 16 Wall. 603, which assails the state right to tax. We rely upon the validity, purpose and effect of an act of congress. (See Secs. 1, 2, 3 and 4 of Chapter 764, Stats. U. S., approved July 10, 1886.)

By the Court, MURPHY, J.:

This action was brought by the state of Nevada to recover from the defendant a certain amount alleged to be due upon lands situate in Washoe county, under the state and county assessment, for taxes in the year 1887. There was assessed to the defendant for that year one hundred and forty thousand five hundred and fifty acres of land, valued at the sum of seventy thousand two hundred and seventy-five dollars. The complaint is in the form prescribed by the statute. The answer contains four defenses. To this answer plaintiff demurred on the grounds that the "answer did not state facts sufficient to constitute a defense to the action; that said answer did not deny all claim, title or interest in the property described in the complaint at the time of the assessment; that

there was no sufficient or specific denial of the allegations of said complaint; that the answer is ambiguous, uncertain and unintelligible, in that it cannot be learned from the whole thereof whether said defendant claims said property therein described, or parts thereof, as exempt, being public United States lands, or disclaim. and deny, or either, any claim, right or interest therein." The demurrer was by the court overruled as to the first, second and third defenses, and sustained as to the fourth. Defendant declined to amend. Judgment was entered in favor of the plaintiff for the taxes, penalties and costs. Defendant appeals. The fourth subdivision of the answer is as follows: " (4) Defendant, in further answering said complaint, alleges that no portion of the lands last above and in subdivision third of this answer described, nor in the following described lands (also being a portion of the lands described in said complaint,) have ever been selected by this defendant, or set off, certified, or listed to this defendant, by the land department of the government of the United States, nor by any other officer thereof, under the acts of Congress of July 1, 1862, and July 2, 1864, known as the ' acts granting lands to the Pacific railroads;' nor has it ever been held, decided, or determined by the lan l department of the government of the United States, nor by any officer thereof, that any of said lands so as above referred to, were or are within the grants contained in said acts of Congress; nor has it ever been determined or decided by the land department of the government of the United States, nor by any officer thereof, whether said lands were mineral or non-mineral in character, or whether they or any of them were embraced in or covered by any valid home-stead or pre-emption, or any other lawful claim whatever upon the part of any citizen of the United States, nor by the govern-ment thereof, as a reservation or otherwise." Defendant further alleges " that it admits all and singular the lands described in third and fourth subdivisions of this answer are within what is known as the 'Forty-Mile Strip,' being twenty miles on each side of defendant's road, as provided in said acts of Congress; yet defendant alleges that it has not at this time, nor has it at any time, any knowledge or information as to the future or probable action of the land de-partment of the government of the United States in relation to the issuance of patents to this defendant for the lands embraced

in subdivisions three and four, nor has defendant any knowledge
or information as to whether or not it will ever be able to
obtain patents therefor; and the decision of such land depart
ment, which defendant is informed and believes must precede
the issuance of such patents, has never been made or rendered
by such land department, nor any officer thereof, nor have
patents been issued therefor." In an amendment to the answer
"defendant specifically denies that it now has or owns, or that
it, at the time of commencement of this action, or at any
other time, or at all, had or owned any right, title, claim,
interest, property, or possession of, in, or to any of the lands
or premises described in third and fourth paragraphs or subdivisions
of said original answer, or of either of them, or of, in, or to any
of said lands or premises, or that it had at any of the times men-
tioned in the complaint on file herein, save and except such right,
title, claim, interest, property, or possession (now unknown and
uncertain, as alleged by defendant in said original answer) as it,
said defendant, may have, obtain, or secure under and by virtue
of the various acts of Congress, known as the 'acts granting
lands to the Pacific railroads,' mentioned and referred to in
such original answer, and such as it, said defendant, may have,
obtain, or secure under and by virtue of the decision and deter
mination of the land department of the government of the
United States, made and rendered under said acts of Congress, and
to which reference has been made by the defendant herein in its
original answer."

The act of Congress of July 1, 1862, to which defendant
refers, is as follows: "Sec. three. That there be, and is hereby,
granted to the said company, for the purpose of aiding in the
construction of said railroad,   *   *   *   and to secure the safe
and speedy transportation of the mails, troops, munitions of
war, and public stores thereon, every alternate section of public
land, designated by odd numbers, to the amount of five alternate
sections per mile, on each side of said railroad, on the line
thereof, and within the limits of ten miles on each side of said
road, not sold, reserved, or otherwise disposed of by the United
States, and to which a pre-emption or homestead claim may not
have attached at the time the line of said road is definitely
fixed; *provided,* that all mineral lands shall be excepted from
the operation of this act." The statute further enacted that

whenever forty consecutive miles of any portion of its road should be ready for the service contemplated by the act, supplied with all the appurtenances of a first-class road, three commissioners were to be appointed by the president of the United States, whose duty it was to examine and report to him; and, if it should appear from such report that forty consecutive miles had been completed in a good and workman-like manner, then patents were to be issued to said road conveying the right and title to the lands granted to the company on each side of the road as far as the same should be completed, and patents were to be issued as each forty miles of road were completed. On July 2, 1864, the act of July 1, 1862, was amended, by extending the grant for twenty miles on each side of said road, and reducing the number of miles of road to be completed by the Central Pacific Railroad Company from forty to twenty, when patents should issue for the lands granted. Also, by adding two sections to the original act: "Sec. 21. That, before any land granted by this act shall be conveyed to any company or party entitled thereto under this act, there shall first be paid into the treasury of the United States the costs of surveying, selecting and conveying the same, by the said company or party in interest, as the title shall be required by said company, which amount shall, without any further apppopriation, stand to the credit of the proper account, to be used by the commissioner of the general land office for the prosecution of the surveys of the public lands along the line of said road, and so from year to year, until the whole shall be completed as provided under the provisions of this act." "Sec. 22. That Congress may at any time alter, amend or repeal this act."

It is a well-known fact that the Central Pacific road is and has been completed for a great number of years, and that it has earned and is entitled to receive its patents to the lands granted to it by the above-mentioned acts of Congress, whenever the said company shall pay into the treasury of the United States the costs of surveying, selecting, and conveying. Under the above-mentioned acts the supreme court of the United States has said that the lands granted to the railroads were not taxable by the states or territories until such time as the companies had paid the costs of surveys. (*Kansas Pac. Ry. Co.* v. *Prescott*, 16 Wall. 603; *Union Pac. Ry. Co.* v. *McShane*, 22 Wall. 444; *Northern Pac. R. R. Co.* v. *Traill Co.*, 115 U. S. 600.) The decision in

the latter case was filed on the seventh day of December, 1885. Justice Miller, in writing the opinion of the court, said: "We are aware of the use being made of this principle by the companies, who, having earned the lands, neglect to pay these costs in order to prevent taxation. The remedy lies with Congress, and is of easy application. If that body will take steps to enforce its lien for these costs of survey, by sale of the lands, or by forfeiture of title, the treasury of the United States would soon be reimbursed for its expenses in making the surveys, and the states and territories, in which the lands lay, be remitted to their appropriate rights of taxation." On the tenth day of July, 1886, Congress passed " An act to provide for taxation of railroad grants, lands and for other purposes." " Section 1. That no lands granted to any railroad corporation by any act of Congress shall be exempt from taxation by states, territories, and municipal corporations on account of the lien of the United States upon the same for the costs of surveying, selecting, and conveying the same, or because no patent has been issued therefor, but this provision shall not apply to lands unsurveyed; *provided,* that any such lands sold for taxes shall be taken by the purchaser subject to the lien for the costs of surveying, selecting, and conveying, to be paid in such manner by the purchaser as the secretary of the interior may by rule provide, and to all liens of the United States, all mortgages of the United States, and all rights of the United States, in respect of such lands." Taking into consideration the opinions of the supreme court above referred to, and the remarks of Justice Miller, in connection with the act of Congress of July 10, 1886, it is evident that Congress intended to, and did, delegate to the states and territories the right to tax the lands granted to railroad companies notwithstanding they had not paid into the treasury of the United States the costs of surveying and selecting, the government taking the chances of collecting such costs from the purchaser at tax-sale.

Defendant contends that the lands described in the complaint and answer are not subject to taxation for state and county purposes, because they have never been selected by, set apart, set off, certified, or listed to the defendant by the government of the United States, through its land department, nor by any officer thereof; and that there has been no judicial or executive determination as to the character or *status* of such lands; that

the government, as grantor, having the power of deciding, has not determined that such lands were within the grant, or that they were within the exception contained in the grant, to wit: pre-emption or homestead claims or mineral lands. The words "that there be and is hereby granted," contained in section 3 of the act of Congress of July 1, 1862, are words of absolute donation, and import a grant *in præsenti*. Such words vest a present title in the grantee. The location of the road, and a survey of the lands, are necessary to give precision to the grant   When that is done, and the work of constructing is prosecuted with due diligence, at the completion of each twenty miles of the road, as required by the act, the company was entitled to patents to the lands granted, and, by relation, would take effect, as of the date of the act of Congress granting the same. (*Central Pac. R. R. Co.* v. *Dyer*, 1 Saw. 652; *Leavenworth etc. R. R. Co.* v. *United States*, 92 U. S. 733; *Northern Pac. R. R. Co.* v. *Traill Co.*, 115 U. S. 606; *Wright* v. *Roseberry*, 121 U. S. 496; *Buttz* v. *Northern Pac. R. R. Co.*, 119 U. S. 66; *Washington & I. R. R. Co.* v. *Northern Pac. R. R. Co.*, Idaho, March, 1889, 21 Pac. Rep. 658.) The right of the state to collect taxes upon the lands embraced in the grants to the Central Pacific Railroad Company cannot be defeated by the delay of the corporation in applying for patents, nor by the neglect or delay of the secretary of the interior to take such steps as may be necessary to determine the character of the land—whether it is mineral or non-mineral. The identification of the land, and its character, if raised by the pleadings, could be determined by the state district court upon the trial of the case.

In *Hannibal etc. R. R. Co.* v. *Smith*, 9 Wall. 97, which was an action brought to recover certain lands which the railroad company claimed under a grant of lands from the government of the United States to the state of Missouri, and a statute of that state vesting the lands in the railroad company, the defendant, Smith, claimed title under a swamp-land grant. The supreme court held that it was competent to prove, by witnesses who knew the lands, that they were swamp and overflowed lands within the meaning of the swamp-land grant. By the acts of Congress relative to the swamp-land grants, it was made the duty of the secretary of the interior to ascertain whether the lands were swamp and overflowed and to furnish a certificate of the char acter of the lands to the state. The supreme court of the United States, in discussing the question as to the competency

of parol proof in the state court to establish the character of the lands, said: "The grants of land by Congress to the states in aid of railroads have generally been made with reference to the lands through which the roads were to pass; and, as the line of the road had to be located after the grant was made, it has been usual, in the acts making the grant, to describe them as alternate sections of odd numbers within a certain limit on each side of the road, when it should be located. This, of course, left it to be determined, by the location of the road, what precise lands were granted. So far as this uncertainty in the grant was concerned, it was one which might remain for a considerable time, but which was capable of being made certain, and was made certain, by the location of the road. But as Congress could not know on what lands these grants might ultimately fall, and as the roads passed through regions where some of the lands had been sold, (some had been granted for other purposes, and some had been reserved for special uses,) though the title remained in the United States, these statutes all contained large exceptions from the grant, as measured by the limits on each side of the road, and as determined by the odd numbers of the sections granted. * * * By the second section of the act of 1850, it was made the duty of the secretary of the interior to ascertain this fact, and furnish the state with the evidence of it. Must the state lose the land, though clearly swamp land, because that officer has neglected to do this? The right of the state did not depend on his action, but on the act of Congress, and though the states might be embarrassed in the assertion of this right by the delay or failure of the secretary to ascertain and make out lists of the lands, the right of the states to them could not be defeated by that delay. As that officer had no satisfactory evidence under his control to enable him to make out these lists, as is abundantly shown by the correspondence of the land department with the state officers, he must, if he had attempted it, rely, as he did in many cases, on witnesses whose personal knowledge enabled them to report as to the character of the tracts claimed to be swamp and overflowed. Why should not the same kind of testimony, subjected to cross-examination, be competent, when the issue is made in a court of justice, to show that they are swamp and overflowed, and so excluded from the grant, under which plaintiff claims,— a grant which was also a gratuity?

The matter to be shown is one of observation and examination, and whether arising before the secretary, whose duty it was primarily to decide it, or before the court, whose duty it became, because the secretary had failed to do it, this was clearly the best evidence to be had, and was sufficient for the purpose. Any other rule results in this: that, because the secretary of the interior has failed to discharge his duty in certifying these lands to the state, they therefore pass under a grant from which they are excepted beyond doubt; and this, when it can be proved, by testimony capable of producing the fullest conviction, that they were of the class excluded from plaintiff's grant." The case of *Wright* v. *Roseberry, supra,* was appealed from the supreme court of the state of California. The opinion was written by Justice Field, and all the authorities were elaborately reviewed. The result and conclusions as stated by the learned justice are as follows: " The result of these decisions is that the grant of 1850 is one *in præsenti,* passing the title to the lands as of its date, but requiring identification of the lands to render the title perfect; that the action of the secretary in identifying them is conclusive against collateral attack as the judgment of a special tribunal to which the determination of the matter is intrusted; but when that officer has neglected or failed to make the identification, it is competent for the grantees of the state, to prevent their rights from being defeated, to identify the lands in 'any other appropriate mode which will effect that object. A resort to such mode of identification would also seem to be permissible where the secretary declares his inability to certify the lands to the state for any cause other than a consideration of their character. * * * The court below held, and placed its decision upon the ground, that because the commissioner of the general land office had not certified the lands in controversy to the state as swamp and overflowed, when this action was commenced in 1870, there was no title in the state by the grant of 1850 which could be enforced, thus making the investiture of title depend upon the act of the commissioner instead of the act of Congress; whereas the certificate of that officer, when the previous requirements of the law have been complied with, is only an official recognition that the lands are of the character designated, and of the completeness of their segregation. The decision is in conflict with its previous decisions, and with the adjudged cases

to which our attention has been called. * * * For the error in holding that the certificate of the commissioner was necessary to pass the title of the demanded premises to the state, the case must go back for a new trial, when the parties will be at liberty to show whether or not the lands in controversy were in fact swamp and overflowed on the day that the swamp-land act took effect." It is true, as claimed by appellant, that the parties and facts were different in the above cases from the one under consideration, but the principles therein enunciated cannot be distinguished from the principles involved in this case, either as to the character of the grant being one *in præsenti,* or the right of the parties to determine in the state court whether any portion of the lands upon which the right to collect taxes is involved are exempted from the grant.

Are the averments in the answer sufficient to constitute a defense, and are they sufficient denials of the ownership of the property assessed? Our statute provides that the pleadings should contain a statement of the facts constituting the cause of action or defense in ordinary and concise language. The statute also defines the several defenses that may be interposed in suits brought for the recovery of delinquent taxes. " Sec. 1108. The defendant may answer. * * * *third,* denying all claim, title or interest in the property assessed at the time of the assessment." There is nothing ambiguous in this language, and the pleadings tested by demurrer should strictly conform to this provision of the statute. The answer of the defendant, " denying all ownership to the lands described in the fourth subdivision, except such ownership as the defendant may have, obtain, or secure, as yet unknown and uncertain on account of the non-action of the government through its land department," is evasive and uncertain, and is not such a denial as would raise an issue as to whether the property was properly assessed to it, and is not such as the defendant is permitted by the statute to make. The character of the lands – as to whether there were any pre-emption or homestead claims or mineral lands included in the assessment—could be determined by observation and examination, and it was the duty of the defendant to make such an inspection as to be able to set forth, in the answer, that the lands were of the class excluded from the defendant's grant. The defendant not having done so, the demurrer was properly sustained. The judgment is affirmed.