The facts are stated in the opinion.
This action was brought by the state of Nevada to recover from the defendant a certain amount alleged to be due upon lands situate in Washoe county, under the state and county assessment, for taxes in the year 1887. There was assessed to the defendant for that year one hundred and forty thousand five hundred and fifty acres of lands, valued at the sum of seventy thousand two hundred and seventy-five dollars. The complaint is in the form prescribed by the statute. The answer contains four defenses. To this answer plaintiff demurred on the grounds that the "answer did not state facts sufficient to constitute a defense to the action; that said answer did not deny all claim, title, or interest in the property described in the complaint at the time of the assessment; that *Page 376 
there was no sufficient or specific denial of the allegations of said complaint; that the answer is ambiguous, uncertain and unintelligible, in that it cannot be learned from the whole thereof whether said defendant claims said property therein described, or parts thereof, as exempt, being public United States lands, or disclaim and deny, or either, any claim, right or interest therein." The demurrer was by the court overruled as to the first, second and third defenses, and sustained as to the fourth. Defendant declined to amend. Judgment was entered in favor of the plaintiff for the taxes, penalties and costs. Defendant appeals. The fourth subdivision of the answer is as follows: "(4) Defendant, in further answering said complaint, alleges that no portion of the lands last above, and in subdivision third of this answer described, nor in the following described lands (also being a portion of the lands described in said complaint,) have ever been selected by this defendant, or set off, certified, or listed to this defendant, by the land department of the government of the United States, nor by any other officer thereof, under the acts of congress of July 1, 1862, and July 2, 1864, known as the `acts granting lands to the Pacific railroads;' nor has it ever been held, decided, or determined by the land department of the government of the United States, nor by any officer thereof, that any of said lands, so as above referred to, were or are within the grants contained in said acts of congress; nor has it ever been determined or decided by the land department of the government of the United States, nor by any officer thereof, whether said lands were mineral or non-mineral in character, or whether they or any of them were embraced in or covered by any valid homestead or preemption, or any other lawful claim whatever upon the part of any citizen of the United States, nor by the government thereof, as a reservation or otherwise." Defendant further alleges "that it admits all and singular the lands described in third and fourth subdivisions of this answer are within what is known as the `Forty-Mile Strip,' being twenty miles on each side of defendant's road, as provided in said acts of congress; yet defendant alleges that it has not at this time, nor has it at any time, any knowledge or information as to the future or probable action of the land department of the government of the United States in relation to the issuance of patents to this defendant for the lands embraced *Page 377 
in subdivisions three and four, nor has defendant any knowledge or information as to whether or not it will ever be able to obtain patents therefor; and the decision of such land department, which defendant is informed and believes must precede the issuance of such patents, has never been made or rendered by such land department, nor any officer thereof, nor have patents been issued therefor." In an amendment to the answer "defendant specifically denies that it now has or owns, or that it, at the time of commencement of this action, or at any other time, or at all, had or owned any right, title, claim, interest, property, or possession of, in, or to any of the lands or premises described in the third and fourth paragraphs or subdivisions of said original answer, or of either of them, or of, in, or to any of said lands or premises, or that it had at any of the times mentioned in the complaint on file herein, save and except such right, title, claim, interest, property, or possession (now unknown and uncertain, as alleged by defendant in said original answer) as it, said defendant, may have, obtain, or secure under and by virtue of the various acts of congress, known as the `acts granting lands to the Pacific railroads,' mentioned and referred to in such original answer, and such as it, said defendant, may have, obtain, or secure under and by virtue of the decision and determination of the land department of the government of the United States, made and rendered under said acts of congress, and to which reference has been made by the defendant herein in its original answer."
The act of congress of July 1, 1862, to which defendant refers, is as follows: "Sec. three. That there be, and is hereby, granted to the said company, for the purpose of aiding in the construction of said railroad, * * * and to secure the safe and speedy transportation of the mails, troops, munitions of war, and public stores thereon, every alternate section of public land, designated by odd numbers to the amount of five alternate sections per mile, on each side of said railroad, on the line thereof, and within the limits of ten miles on each side of said road, not sold, reserved, or otherwise disposed of by the United States, and to which a preemption or homestead claim may not have attached at the time the line of said road is definitely fixed; provided, that all mineral lands shall be excepted from the operation of this act." The statute further enacted that *Page 378 
whenever forty consecutive miles of any portion of its road should be ready for the service contemplated by the act, supplied with all the appurtenances of a first-class road, three commissioners were to be appointed by the president of the United States, whose duty it was to examine and report to him; and, if it should appear from such report that forty consecutive miles had been completed in a good and workman-like manner, then patents were to be issued to said road conveying the right and title to the lands granted to the company on each side of the road as far as the same should be completed, and patents were to be issued as each forty miles of road were completed. On July 2, 1864, the act of July 1, 1862, was amended, by extending the grant for twenty miles on each side of said road, and reducing the number of miles of road to be completed by the Central Pacific railroad company from forty to twenty, when patents should issue for the lands granted. Also, by adding two sections to the original act: "Sec. 21. That, before any land granted by this act shall be conveyed to any company or party entitled thereto under this act, there shall first be paid into the treasury of the United States the costs of surveying, selecting and conveying the same, by the said company or party in interest, as the title shall be required by said company, which amount shall, without any further appropriation, stand to the credit of the proper account, to be used by the commissioner of the general land office for the prosecution of the surveys of the public lands along the line of said road, and so from year to year, until the whole shall be completed as provided under the provisions of this act." "Sec. 22. That congress may at any time alter, amend or repeal this act."
It is a well-known fact that the Central Pacific road is and has been completed for a great number of years, and that it has earned and is entitled to receive its patents to the lands granted to it by the above-mentioned acts of congress, whenever the said company shall pay into the treasury of the United States the costs of surveying, selecting, and conveying. Under the above-mentioned, acts the supreme court of the United States has said that the lands granted to the railroads were not taxable by the states or territories until such time as the companies had paid the costs of surveys. (Railway Co. v. Prescott,
16 Wall. 603; Railway Co. v McShane,
22 Wall. 444; Railroad Co. v. Traill Co.,115 U. S. 600.) The decision in *Page 379 
the latter case was filed on the seventh day of December, 1885. Justice Miller, in writing the opinion of the court, said: "We are aware of the use being made of this principle by the companies, who, having earned the lands, neglect to pay these costs in order to prevent taxation. The remedy lies with congress, and is of easy application. If that body will take steps to enforce its lien for these costs of survey, by sale of the lands, or by forfeiture of title, the treasury of the United States would soon be reimbursed for its expenses in making the surveys and the states and territories, in which the lands lay, be remitted to their appropriate rights of taxation." On the tenth day of July, 1886, congress passed "An act to provide for taxation of railroad grants, lands and for other purposes." "Section 1. That no lands granted to any railroad corporation by any act of congress shall be exempt from taxation by states, territories, and municipal corporations on account of the lien of the United States upon the same for the costs of surveying, selecting, and conveying the same, or because no patent has been issued therefor, but this provision shall not apply to lands unsurveyed: provided, that any such lands sold for taxes shall be taken by the purchaser subject to the lien for the costs of surveying, selecting, and conveying, to be paid in such manner by the purchaser as the secretary of the interior may by rule provide, and to all liens of the United States, all mortgages of the United States, and all rights of the United States, in respect of such lands." Taking into consideration the opinions of the supreme court above referred to, and the remarks of Justice Miller, in connection with the act of congress of July 10, 1886, it is evident that congress intended to, and did, delegate to the states and territories the right to tax the lands granted to railroad companies notwithstanding they had not paid into the treasury of the United States the costs of surveying and selecting, the government taking the chances of collecting such costs from the purchaser at tax-sale.
Defendant contends that the lands described in the complaint and answer are not subject to taxation for state and county purposes, because they have never been selected by, set apart, set off, certified, or listed to the defendant by the government of the United States, through its land department, nor by any officer thereof; and that there has been no judicial or executive determination as to the character or status of such lands; that *Page 380 
the government, as grantor, having the power of deciding, has not determined that such lands were within the grant, or that they were within the exception contained in the grant, to-wit: preemption or homestead claims or mineral lands. The words "that there be and is hereby granted," contained in section 3 of the act of congress of July 1, 1862, are words of absolute donation, and import a grant in prœsenti.
Such words vest a present title in the grantee. The location of the road, and a survey of the lands, are necessary to give precision to the grant. When that is done, and the work of constructing is prosecuted with due diligence, at the completion of each twenty miles of the road, as required by the act, the company was entitled to patents to the lands granted, and, by relation, would take effect, as of the date of the act of congress granting the same. (Railroad Co. v. Dyer, 1 Saw. 652; RailwayCo. v. U. S., 92 U. S. 733; RailroadCo. v. Traill Co., 115 U. S. 606;Wright v. Roseberry, 121 U. S. 496;Buttz v. Railroad Co., 119 U. S. 66;W. I. R. R. Co. v. N. P. R. R. Co.,
21 Pac. Rep. 658.) The right of the state to collect taxes upon the lands embraced in the grants to the Central Pacific railroad company cannot be defeated by the delay of the corporation in applying for patents, nor by the neglect or delay of the secretary of the interior to take such steps as may be necessary to determine the character of the land — whether it is mineral or non-mineral. The identification of the land, and its character, if raised by the pleadings, could be determined by the state district court upon the trial of the case.
In Railroad Co. v. Smith, 9 Wall. 97, which was an action brought to recover certain lands which the railroad company claimed under a grant of lands from the government of the United States to the state of Missouri, and a statute of that state vesting the lands in the railroad company, the defendant, Smith, claimed title under a swamp-land grant. The supreme court held that it was competent to prove, by witnesses who knew the lands, that they were swamp and overflowed lands within the meaning of the swamp-land grant. By the acts of congress relative to the swamp-land grants, it was made the duty of the secretary of the interior to ascertain whether the lands were swamp and overflowed and to furnish a certificate of the character of the lands to the state. The supreme court of the United States, in discussing the question as to the competency *Page 381 
of parol proof in the state court to establish the character of the lands, said: "The grants of land by congress to the states in aid of railroads have generally been made with reference to the lands through which the roads were to pass; and, as the line of the road had to be located after the grant was made, it has been usual, in the acts making the grant, to describe them as alternate sections of odd numbers within a certain limit on each side of the road, when it should be located. This, of course, left it to be determined, by the location of the road, what precise lands were granted. So far as this uncertainty in the grant was concerned, it was one which might remain for a considerable time, but which was capable' of being made certain, and was made certain, by the location of the road. But as congress could not know on what lands these grants might ultimately fall, and as the roads passed through regions where some of the lands had been sold, (some had been granted for other purposes, and some had been reserved for special uses,) though the title remained in the United States, these statutes all contained large exceptions from the grant, as measured by the limits on each side of the road, and as determined by the odd numbers of the sections granted. * * * By the second section of the act of 1850, it was made the duty of the secretary of the interior to ascertain this fact, and furnish the state with the evidence of it. Must the state lose the land, though clearly swamp land, because that officer has neglected to do this? The right of the state did not depend on his action, but on the act of congress, and though the states might be embarrassed in the assertion of this right by the delay or failure of the secretary to ascertain and make out lists of the lands, the right of the states to them could not be defeated by that delay. As that officer had no satisfactory evidence under his control to enable him to make out these lists, as is abundantly shown by the correspondence of the land department with the state officers, he must, if he had attempted it, rely, as he did in many case's, on witnesses whose personal knowledge enabled them to report as to the character of the tracts claimed to be swamp and overflowed. Why should not the same kind of testimony, subjected to cross-examination, be competent, when the issue is made in a court of justice, to show that they are swamp and overflowed, and so excluded from the grant, under which plaintiff claims, — a grant which was also a gratuity? *Page 382 
The matter to be shown is one of observation and examination, and whether arising before the secretary, whose duty it was primarily to decide it, or before the court, whose duty it became, because the secretary had failed to do it, this was clearly the best evidence to be had, and was sufficient for the purpose. Any other rule results in this: that, because the secretary of the interior has failed to discharge his duty in certifying these lands to the state, they therefore pass under a grant from which they are excepted beyond doubt; and this, when it can be proved, by testimony capable of producing the fullest conviction, that they were of the class excluded from plaintiff's grant." The case ofWright v. Roseberry, supra, was appealed from the supreme court of the state of California. The opinion was written by Justice Field, and all the authorities were elaborately reviewed. The result and conclusions as stated by the learned justice are as follows: "The result of these decisions is that the grant of 1850 is one inprœsenti, passing the title to the lands as of its date, but requiring identification of the lands to render the title perfect; that the action of the secretary in identifying them is conclusive against collateral attack as the judgment of a special tribunal to which the determination of the matter is intrusted; but when that officer has neglected or failed to make the identification, it is competent for the grantees of the state, to prevent their rights from being defeated, to identify the lands in any other appropriate mode which will effect that object. A resort to such mode of identification would also seem to be permissible where the secretary declares his inability to certify the lands to the state for any cause other than a consideration of their character. * * * The court below held, and placed its decision upon the ground, that because the commissioner of the general land office had not certified the lands in controversy to the state as swamp and overflowed, when this action was commenced in 1870, there was no title in the state by the grant of 1850 which could be enforced, thus making the investiture of title depend upon the act of the commissioner instead of the act of Congress; whereas the certificate of that officer, when the previous requirements of the law have been complied with, is only an official recognition that the lands are of the character designated, and of the completeness of their segregation. The decision is in conflict with its previous decisions, and with the adjudged cases *Page 383 
to which our attention has been called. * * * For the error in holding that the certificate of the commissioner was necessary to pass the title of the demanded premises to the state, the case must go back for a new trial, when the parties will be at liberty to show whether or not the lands in controversy were in fact swamp and overflowed on the day that the swamp-land act took effect." It is true, as claimed by appellant, that the parties and facts were different in the above cases from the one under consideration, but the principles therein enunciated cannot be distinguished from the principles involved in this case, either as to the character of the grant being one in prœsenti, or the right of the parties to determine in the state court whether any portion of the lands upon which the right to collect taxes is involved are exempted from the grant.
Are the averments in the answer sufficient to constitute a defense, and are they sufficient denials of the ownership of the property assessed? Our statute provides that the pleadings should contain a statement of the facts constituting the cause of action or defense in ordinary and concise language. The statute also defines the several defenses that may be interposed in suits brought for the recovery of delinquent taxes. "Sec. 1108. The defendant may answer. * * * third, denying all claim, title or interest in the property assessed at the time of the assessment." There is nothing ambiguous in this language, and the pleadings tested by demurrer should strictly conform to this provision of the statute. The answer of the defendant, "denying all ownership to the lands described in the fourth subdivision, except such ownership as the defendant may have, obtain, or secure, as yet unknown and uncertain on account of the non-action of the government through its land department," is evasive and uncertain, and is not such a denial as would raise an issue as to whether the property was properly assessed to it, and is not such as the defendant is permitted by the statute to make. The character of the lands — as to whether there were any preemption or homestead claims or mineral lands included in the assessment — could be determined by observation and examination, and it was the duty of the defendant to make such an inspection as to be able to set forth, in the answer, that the lands were of the class excluded from the defendant's grant. The defendant not having done so, the demurrer was properly sustained. The judgment is affirmed. *Page 384