# CENTRAL PACIFIC RAILROAD COMPANY *v.* NEVADA.

## SAME *v.* SAME.

ERROR TO THE SUPREME COURT OF THE STATE OF NEVADA.

Nos. 170, 171. Argued March 20, 1896. — Decided April 20, 1896.

Since the passage of the act of July 10, 1886, c. 764, 24 Stat. 143, surveyed but unpatented lands, on which the costs of survey have not been paid, included within a railroad land grant, are subject to taxation by the State in which they are situated.

The nature of the taxable interest of a railroad company on such lands so subjected to taxation, with the assent of Congress, does not present a Federal question.

The possessory claim of the railroad company to such lands is taxable under the laws of Nevada without reference to the fact that they may be hereafter determined to be mineral lands, and so be excluded from the operation of the grant.

THIS case (No. 170) was an action originally begun in the district court of Lander county by the State of Nevada against the Central Pacific Railroad Company and its property within such county, as well as the county's proportion of its rolling stock, to recover a state tax of $5545.92, and a county tax of $17,870.19, levied upon such road and its property for the year 1888. The petition prayed for judgment against the road for the amount of the tax and penalties for non-payment, and attorney's fees, and "for such other judgment as to justice belongs."

The suit was both *in rem* and *in personam*, a statute of Nevada providing for bringing a suit against the person to whom the property is alleged to belong, and also against the property itself, and that the judgment rendered shall be against both, and be a lien upon the property.

The railroad company answered the complaint; denied that it owned or possessed any land subject to taxation by the State, and disclaimed any interest in the lands described in the complaint, other than that derived by and through the

statutes of the United States of 1862 and 1864, granting lands to the Pacific Railroads; and by an amendment to its answer alleged that the costs of surveying, selecting and patenting said lands had never been paid to the United States, and that the same were due and unpaid.

The suit was tried upon a stipulation as to the facts in the following language:

"It is hereby stipulated and agreed that of the land described in the amended complaint on file herein 131,386 acres are surveyed, but unpatented, and the same were assessed for the year 1888 at fifty cents per acre by the assessor of said county.

"That the patented lands embraced in said complaint amounted to 24,123 acres, and the same were assessed at $1.25 per acre for the said year by the said assessor.

"That of the lands described in said complaint 195,200 acres are unsurveyed, 2080 acres were sold and conveyed by defendant, and 960 acres were beyond the limits of the grants to said defendant and were not its property, and the said lands were assessed for said year by said assessor at fifty cents per acre.

"That the tax levy for said year was $3.80 on each $100.

"That the costs of surveying, selecting and conveying 122,824 acres of said surveyed unpatented lands above mentioned have not been paid.

"That said defendant has heretofore mortgaged said lands described in the said complaint, and has at divers times leased various portions thereof.

"That said defendant has never had any other possession of any part of said lands than such as may be inferred from executing said mortgages and leases and by virtue of the land grants to it of 1862 and 1864."

The district court held that the State was entitled to recover for the taxes levied upon the patented lands, also for the taxes levied upon the unpatented but surveyed lands, on which the cost of surveying had not been paid; but that it was not entitled to recover for the taxes levied upon unsurveyed lands.

To that judgment the defendant excepted, stating as one of its reasons for such exception that the decision and judgment

showed that the same were based upon the taxability of 131,386 acres of surveyed but unpatented lands, at an assessed valuation of fifty cents per acre; while the evidence, as contained in the agreed statement of facts, showed that said 131,386 acres of surveyed unpatented lands contained and were made up in part of 122,824 acres of land upon which the costs due to the government of the United States for surveying, selecting and patenting the same had never been paid.

Both parties appealed to the Supreme Court of the State from the judgment of the district court, upon the hearing of which appeals the judgment was affirmed. 21 Nevada, 247. From that judgment of affirmance the railroad company sued out a writ of error from this court, assigning for error that the Supreme Court awarded judgment to the plaintiff below for the taxes assessed upon 122,384 acres of surveyed unpatented lands, upon which the costs of surveying, selecting and conveying had not, at the time of such assignment, or since, been paid, and of which the plaintiff in error had never been in possession.

The State being bound by the decision of its Supreme Court that the 195,200 acres of unsurveyed lands were not taxable, was not entitled, and did not attempt to sue out a writ of error.

Another action (No. 171) in all respects similar to the first, except in the amounts claimed, was subsequently begun to recover the taxes upon the same property for the year 1889, and was carried to a similar conclusion.

*Mr. Wheeler H. Peckham* for plaintiff in error.

I. It is essential, on the threshold of the discussion, to clearly apprehend what is the action of the State of Nevada, of which the plaintiff in error complains.

The statutes of Nevada, under which this action was taken, provide as follows:

"1079. Sec. 3. Every tax levied under the provisions or authority of this act is hereby made a lien against the property assessed, . . . and shall not be satisfied or removed until all the taxes are paid or the property has absolutely vested in a purchaser under a sale for taxes."

" 1080.   Sec. 4. All property of every kind and nature whatsoever within this State shall be subject to taxation except : *First.*   All lands and other property owned by the State or by the United States, or by any county, etc., etc.   *Second.* Mines and mining claims; provided that nothing in this section shall be so construed as to exempt from taxation possessory claims to the public lands of the United States or of this State, or the proceeds of the mines, and provided further, that nothing herein shall be so construed as to interfere with the primary title to the lands belonging to the United States."

" 1081.   Sec. 5. The term 'real estate' when used in this act shall be deemed and taken to mean and include, and it is hereby declared to mean and include  .  .  .  the ownership of or claim to or possession of or right of possession to any lands within the State, and the claim by or the possession of any person, firm or corporation, association or company to any land, and the same shall be listed under the head of real estate."

" 1088.   Sec. 12.   It is the duty of the assessor to prepare a tax list or assessment roll, in which shall be stated, among other things, 'all real estate, including the ownership or claim to, or possession of, or right of possession to, any land and improvements  .  .  .  described by metes and bounds, or by common designation or name.'

" A form is given as follows :

Taxpayer's name_____

Description of Property_____

Real Estate, Number of Acres_____

Possessory Claim, Number of Acres_____

Section_____

Number of Lot_____

Number of Block_____

| | Dollars. | Cents. |
|---|---|---|
| Value of Real Estate or Possessory Claim and Improvements_____ | | |
| Value of Improvements on Real Estate or Possessory Claim Assessed to persons other than the owners of said real estate or possessory claim_____ | | |

The tax statutes of the State of Nevada thus provide for the taxing of the two separate interests in real estate, viz.: (*a*) The whole estate as described on the tax list or assessment roll under the title "Real Estate, Number of Acres;" and (*b*) A less estate, but involving possession described on the tax list or assessment roll under the title, "Possessory Claim, Number of Acres."

This action was brought by the State of Nevada on the ground that the defendant below had a "possessory claim" to certain lands which the proper officials of the State had assessed for taxes and on which the defendant below had not paid the taxes.

The answer of defendant below (after dealing with certain allegations of the complaint as to assessment and non-payment of taxes on its roadbed, etc., and raising questions as to the same, which were satisfactorily determined by the court below, and which are not before this court) denied that it had any possessory claim in or to said lands, and alleged that the only interest of defendant below in said lands was that derived from the acts of Congress of 1862 and 1864, making certain grants to the Pacific Railroad companies, and that as to such lands a portion were unsurveyed and unpatented — a portion surveyed but unpatented and costs of survey unpaid, and but a small portion patented.

The pleadings thus presented a direct issue as to whether the defendant below had a "possessory claim" in these lands which could be taxed or assessed by the State of Nevada.

On that issue the only evidence is the stipulation found in the record.

It is that the defendant *never had any other* possession of any part of said lands than such as may *be inferred* from executing the mortgages and leases and by virtue of the land grants.

The court below in construing the tax statute of Nevada above recited in this case held that the terms "possessory claims," "claim to possession or right to possession," to any lands do not mean such right or claim when not accompanied by actual possession.

. The court says : " But such possession, to be of any validity, must be actual and substantial. It must be an actual occupation, a complete subjugation, to the will, and control *a pedis possessio*. The mere assertion of title, the casual or occasional doing of some act upon the premises, have never been held sufficient.

. This construction of the meaning of the words " possessory claim," etc., in the Nevada statute by the highest court of that State, it is well settled, is binding on and will be followed by this court ; and it is *the judgment* in this case. *Nesmith* v. *Sheldon,* 7 How. 812 ; *Fairfield* v. *Gallatin County,* 100 U. S. 47, and cases cited on page 52 ; *Suydam* v. *Williamson,* 24 How. 427 ; *Ridings* v. *Johnson,* 128 U. S. 212, 224, and cases cited.

. In *People* v. *Weaver,* 100 U. S. 539, the rule is applied to a state tax statute.

This construction of the terms " possessory claims," etc., of course, applies to the assessment on surveyed unpatented lands equally with unsurveyed unpatented.

The stipulation is the same as to both classes, and it is " that defendant below never had any other possession of any part of said lands," referring to the whole 195,200 acres, " than such as may be inferred from executing said mortgages," etc.

It must follow in the language of the court below that " there is nothing to tax " unless " the *title* is subject to taxation." Now this court has held in repeated adjudications that *the title* to surveyed unpatented lands on which the costs of survey have not been paid is not subject to taxation. *Railway Co.* v. *Prescott,* 16 Wall. 603 ; *Railway Co.* v. *McShane,* 22 Wall. 444 ; *Northern Pacific Railroad* v. *Traill County,* 115 U. S. 600 ; *Ankeny* v. *Clark,* 148 U. S. 345.

II. It appearing, then, that the State of Nevada has taxed lands which, but for the act of Congress of 1886, are not taxable, we submit that such act of Congress has not made such lands taxable under the Nevada statutes.

The act of Congress referred to is in these words : " That no lands granted to any railroad corporation by any act of Congress shall be exempt from taxation by States, Territories

and municipal corporations on account of the lien of the United States upon the same for the costs of surveying, selecting and conveying the same, or because no patent has been issued therefor, but this provision shall not apply to lands unsurveyed: *Provided*, That any such land sold for taxes shall be taken by the purchaser, subject to the lien for costs of surveying, selecting and conveying, to be paid in such manner by the purchaser as the Secretary of the Interior may by rule provide, and to all liens of the United States, all mortgages of the United States, and all rights of the United States in respect of such lands: *Provided, further*, that this act shall apply only to lands situated opposite to and coterminous with completed portions of said roads and in organized counties: *Provided, further*, that at any sale of lands under the provisions of this act the United States may become a preferred purchaser, and in such case the lands sold shall be restored to the public domain and disposed of as provided by the laws relating thereto." Act of July 10, 1886, § 1, c. 764, 24 Stat. 143.

The opinion of the court below devotes some space to an attempt to show that this act of Congress was accepted by the State of Nevada, or that the act of Congress, together with the state law, formed a sort of composite tax law under which these lands could be taxed and sold.

It is not a question of acceptance or non-acceptance. It is a question whether the State has power to tax what it *has* taxed. In the series of decisions on the validity of state laws taxing shares in national banks this court has definitely settled the rule as to what is required to make valid state tax laws taxing property subject to taxation only by act of Congress. *Bank of Commerce* v. *New York*, 2 Black, 620; *Bank Tax case*, 2 Wall. 200; *Van Allen* v. *Assessors*, 3 Wall. 573; *People* v. *Weaver*, 100 U. S. 539. In these cases we see how emphatic has been the view of this court that the state law itself must contain the affirmative provisions which shall make it conformable to the act of Congress, and that the act of Congress cannot be relied upon to modify the state law or to coördinate itself with the state law.

That this state tax law does not tax these lands and that the state authorities have not taxed them in pursuance of the act of Congress seems clear.

III. No lands granted to the Central Pacific Railroad Company can be taxed by a State prior to the issue of a patent.

The grant to the Central Pacific Railroad excludes or reserves mineral lands — not merely the minerals, but mineral lands. The right and power to ascertain which of the lands, included within the territorial limits of the grant as fixed by the definite location of the line of the road, are mineral and which non-mineral is vested exclusively in the United States administrative officers, and is conclusively proved only by the issue of a patent.

Argument on this proposition seems unnecessary after the decision of this court in *Barden* v. *Northern Pacific Railroad*, 154 U. S. 288. In the case at bar the grant of the unpatented lands is, and remains, a float until a patent issues; for, until then, no one can say whether any particular acre of land passes or not.

*Mr. John C. Chaney* for defendant in error.

*Mr. Robert M. Beatty*, attorney general of the State of Nevada, and *Mr. Henry Mayenbaum* filed a brief for defendant in error.

MR. JUSTICE BROWN, after stating the case, delivered the opinion of the court.

There appear to be within the county of Lander four classes of lands embraced within the Pacific land grants of 1862 and 1864.

(1.) Patented lands to the amount of 24,123 acres, assessed at $1.25 per acre, concerning the taxability of which there is no dispute. *Railway Co.* v. *McShane*, 22 Wall. 444.

(2.) Unsurveyed lands to the amount of 195,200 acres, assessed at 50 cents per acre, and held, both by the district court and by the Supreme Court of the State, not to be sub-

ject to taxation. See also act of July 10, 1886, c. 764, § 1, 24 Stat. 143. No question is made with regard to the propriety of this ruling.

(3.) Surveyed but unpatented lands, upon which the costs of survey have been paid ; 8562 acres. These would, of course, be subject to taxation if the following class was adjudged to be so subject.

(4.) Surveyed but unpatented lands, upon which the costs of survey have not been paid ; 122,824 acres.

1. The principal dispute is with regard to the fourth class, that is, unpatented lands which have been surveyed, but the costs of which survey have not been paid. As to lands of this class it was held by this court in *Railway Co.* v. *Prescott,* 16 Wall. 603, that, although lands sold by the United States may be taxed before the government has parted with the legal title by issuing the patent, this principle was to be understood as applicable only to cases where the right to the patent is complete, and the equitable title fully vested, without anything more to be paid, or any act done going to the foundation of the right; and hence, where there had been a large grant to a railroad company, if prepayment by the grantee of the cost of surveying the lands granted be required by the statute making the grant, before any of the lands shall be conveyed, no title vested in the grantee, and the State could not levy taxes on the land, and under such levy sell and make a title which might defeat the lien of the United States. In this particular, this case was affirmed in *Railway Co.* v. *McShane,* 22 Wall. 444, 462, and *Northern Pacific Railroad* v. *Traill County,* 115 U. S. 600.

Apparently to provide for this contingency and to render these lands subject to state taxation, Congress, on July 10, 1886, 24 Stat. 143, passed an act to provide for the taxation of railroad grant lands and for other purposes, the first section of which enacted " that no lands granted to any railroad corporation by any act of Congress shall be exempted from taxation by States, Territories and municipal corporations on account of the lien of the United States upon the same for the costs of surveying, selecting and conveying the same, or be-

cause no patent has been issued therefor; but this provision shall not apply to lands unsurveyed: *Provided*, That any such land sold for taxes shall be taken by the purchaser subject to the lien for costs of surveying, selecting and conveying, to be paid in such manner by the purchaser as the Secretary of the Interior may by rule provide and to all liens of the United States, all mortgages of the United States, and all rights of the United States in respect to such lands: *Provided further*, That this act shall apply only to lands situated opposite to and coterminous with completed portions of said roads, and in organized counties: *Provided further*, That at any sale of lands under the provisions of this act the United States may become a preferred purchaser, and in such case the lands sold shall be restored to the public domain and disposed of as provided by the laws relating thereto."

In view of this statute it is difficult to see how these lands, which are the very ones provided for by the statute, can escape taxation, if the State chooses to tax them. The argument of the railroad company in this connection is that, by the General Statutes of Nevada upon the subject of taxation, § 1080, "nothing . . . shall be so construed as to exempt from taxation possessory claims to the public lands of the United States, or of this State: . . . *and provided further*, that nothing herein shall be so construed as to interfere with the primary title to the lands belonging to the United States;" that by § 1081, "the term 'real estate,' when used in this act, shall be deemed and taken to mean and include . . . the ownership of, or claim to, or possession of, or right of possession to any lands within the State, and the claim by or the possession of any person, firm, corporation, association or company to any land, and the same shall be listed under the head of real estate;" that, by § 1088, "it is the duty of the assessor to prepare a tax list, or assessment roll, . . . in which . . . shall be listed . . . all real estate, including the ownership or claim to, or possession of, or right of possession to any land and improvements," etc.; that this action was brought by the State of Nevada to subject these lands to taxation upon the ground that the railroad company

had a " possessory claim " to them, which the proper officers of the State had assessed for taxes; that the railroad company, in its answer, denied that it had any possessory claim in or to said lands, and alleged that its only interest was that derived from the land grant acts of Congress of 1862 and 1864, and that as to said lands a portion were unsurveyed and unpatented, a portion surveyed but unpatented and costs of survey unpaid, and but a small portion patented; that the pleadings thus presented a direct issue as to whether the company had a " possessory claim " in these lands, which could be taxed by the State; that the only evidence upon such issue was the stipulation above recited, to the effect that the defendant never had any other possession of any part of said lands than such as may be inferred from executing said mortgages and leases, and by virtue of the land grants; that the Supreme Court of the State, in considering the taxing statute above recited, held, in respect to the *unsurveyed* lands, that the terms "possessory claims," "claim to possession or right to possession" to any lands did not mean such right or claim when not accompanied by actual possession, and hence that unsurveyed lands were not subject to taxation; that such construction of the term "possessory claims" applies to *surveyed* as well as unsurveyed lands; and hence it must follow that there is nothing to tax, unless the title is subject to taxation, and that this court has held in the three cases above cited, that the title to surveyed patented lands, upon which the costs of survey have not been paid, is not subject to taxation.

It is a sufficient answer to this argument to say that, whether the inclusion of these lands in the land grant acts of 1862 and 1864, and the subsequent mortgaging and leasing of them by the railroad company, constituted a " possessory claim " to the lands under the taxing laws of Nevada, is not a Federal question, but a question as to the proper construction of the words " possessory claim," used in the state statute. It is true that, with respect to the unsurveyed lands, the Supreme Court held that the railroad company had no such actual and substantial possession as would justify their taxation under the statute, and that it does not expressly appear from the opinion that

the court put the right of the State to recover its taxes upon the surveyed lands upon the ground that the railroad did have a possessory claim thereto ; but it does not necessarily follow that any Federal question was thereby raised, or that any right, title, privilege or immunity set up under a statute of the United States was denied to it. It does explicitly appear that authority was given by Congress to the States to tax these lands ; but whether, under the state laws, the railroad had any taxable interest therein, or whether the decision of the court that it had no such interest in the unsurveyed lands is consistent with its opinion that it had such interest in the surveyed lands, is immaterial, so long as no Federal right was denied to it. It is perfectly obvious that no attempt was made to tax the title of the government, and that the subjection of these lands to taxation by the State must have rested upon some theory that the railroad had a taxable interest in them. What that interest was does not concern us, so long as it appears that, so far as Congress is concerned, express authority was given to tax the lands.

No action on the part of the State or its legislature was necessary to signify its acceptance of the authority conferred by the Federal statute. Where a grant of lands is made by Congress to a State for the purpose of building a railroad, it has been customary for the State to accept such grant as authority for the conveyance of the lands to a designated railway company ; but where a simple power is given, no acceptance of such power by the State is necessary as a preliminary to its exercise.

Nor, conceding that the General Statutes of Nevada were inoperative to authorize the taxation of these lands prior to the act of Congress of July, 1886, was any reënactment of those statutes necessary, since the effect of this act was merely to remove the only obstacle to their enforcement. As was said by this court with respect to an act of Congress declaring intoxicating liquors to be subject to the laws of each State, upon their arrival therein, " Congress did not use terms of permission to the State to act, but simply removed an impediment to the enforcement of the state laws with respect to imported packages in their original condition, created by the absence of

a specific utterance on its part. It imparted no power to the State not then possessed, but allowed imported property to fall at once upon arrival within local jurisdiction." *In re Rahrer*, 140 U. S. 545, 564; see also *Butler* v. *Goreley*, 146 U. S. 303, 314.

While, as above stated, it does not clearly appear from the opinion of the Supreme Court of Nevada, in this particular case, what the distinction is as to a possessory claim between surveyed and unsurveyed lands, there is a clear distinction in the fact, that until lands are surveyed, it is impracticable to identify them for the purposes of taxation. This question had theretofore been considered by the Supreme Court of Nevada in the case of the *State* v. *Central Pacific Railroad*, 25 Pac. Rep. 442, and probably the court, in delivering its opinion in this case, did not deem it necessary to restate the distinction there made. In the opinion of the court in that case it was said: "A reason for withholding the right to tax unsurveyed lands may be found in the fact that it is impracticable to assess them. It is a well established principle of law that land assessed for the purpose of taxation must be so described that it may be identified. . . . The lands granted to the railroad company were the odd numbered sections within the limits of twenty miles on each side of the railroad, except such as had been sold or otherwise disposed of by the United States, or to which a homestead or preëmption claim had attached, or mineral lands. Until the surveys are made it cannot be known what parts of the land are within the enumerated exceptions, or what sections or parts of sections will belong to the company, nor until then can the locality of the lands be determined so that a description will identify them. . . . It must be borne in mind that the unsurveyed lands are not described by metes and bounds, or by common designation or name, but as sections and parts of sections, and, as alleged by the complaint, 'as their designation will appear when the surveys of the United States are extended over them.' It is plain that this is not a description by which the identity of the lands may be established, and it is equally plain that possession of the lands so described can-

not be established until the surveys are made." See also *Robinson* v. *Forrest*, 29 California, 317, 325 ; *Middleton* v. *Low*, 30 California, 596, 605 ; *Bullock* v. *Rouse*, 81 California, 590 ; *People* v. *Mahoney*, 55 California, 286 ; *Keane* v. *Cannovan*, 21 California, 291, 302. Evidently this course of reasoning does not apply to lands which have been surveyed.

2. It is further claimed that no lands granted to this road can be taxed prior to the issue of the patent, because the grant excludes mineral lands; not only minerals but mineral lands ; that the right and power to ascertain which of the lands are mineral and which non-mineral is vested exclusively in the officers of the government, and can be proved only by the issue of a patent, as held by this court in *Barden* v. *Northern Pacific Railroad*, 154 U. S. 288. It is argued that, if the railroad company paid taxes upon these lands, it might never own or acquire them, and the tax would consequently be paid on property it never owned or could own; and that, upon the other hand, if the company should not pay the taxes, and the lands be sold under the judgment appealed from, the title to the lands, if the assessment were valid, would pass to the purchaser, whether they were mineral or not.

But, if the railroad has a possessory claim to these lands, they are taxable under the statute of Nevada, and it is this and this only which the State has assumed to tax. If it has no possessory claim, because the lands are mineral, it certainly cannot be injured by a sale of the lands to pay the tax, and whether the sale of such lands would pass the title or not is a question in which the railroad company is not interested. The company has an enormous land grant, embracing every alternate section of land within twenty miles on each side of the road, with a reservation of mineral lands from the operation of the act. Can it possibly have been intended that these lands should remain wholly untaxed, until the mineral lands, which it may be assumed represent but a very small portion of the total grant, have been identified and excepted? Clearly not. There is no presumption that the land is mineral, and if it be so, and the railroad company disclaims title to it for that reason, it would probably be a good defence to a suit for

taxes. But the possibility that certain lands may turn out to be mineral lands surely cannot be a defence to a claim for taxes applicable to the entire grant, so long as the railroad company lays claim to the right of the possession of such lands.

It is true that in the *Barden case* we held that mineral lands were excluded from the operation of the Pacific Railroad land grants, whether such minerals were known or unknown at the date of the grant, because the statutes had excepted them in the most unequivocal terms; but nothing was said in that case to impugn the authority of previous cases which had held that these grants were *in præsenti* of lands to be afterwards located. They became so located when they were surveyed. " Then the grants attached to them, subject to certain specified exceptions," (p. 313,) one of which was that minerals should be discovered upon them before the issue of a patent, when as to such lands the title of the company failed. The possibility, however, that minerals might be discovered upon certain sections of these lands, as to which the title of the railway company might be defeasible, would not impair their title to the great bulk of the grant, or enable the company with respect thereto to evade its just obligations to the State. Should the company disclaim a right to the possession of any portion of these lands by reason of the discovery of minerals thereon, there would remain no right to tax them under the statutes of Nevada, but so long as the company asserts a possessory claim to them it implies a corresponding obligation to pay the taxes upon them. *State* v. *Central Pacific Railroad*, 20 Nevada, 372.

The company has had possession of these lands for some thirty years; has offered them for sale, and sold them as its own, and, whenever it has been for its advantage to do so, has claimed possession of them and dealt with them as its private property. To assert all the rights of ownership, and at the same time to repudiate.all its obligations consists neither with the terms of the grant nor with the dictates of natural justice.

· The.act of Congress, in providing that such lands shall not be exempted from taxation, impliedly assents to their sale, but also guards its own right to them by providing that they shall

be taken by the purchaser subject to the lien for costs for surveying, to be paid in such manner as the Secretary of the Interior may provide; and to all liens of the United States, all mortgages of the United States, and all rights of the United States in respect to such lands; and also by providing that at any such sale the government may become a preferred purchaser, and in such case the lands sold shall be restored to the public domain and disposed of as provided by the laws relating thereto. The rights of the government with respect to such lands are thus carefully preserved and protected.

If the company is liable for taxes upon lands which have been surveyed, but the cost of which survey has not been paid, *a fortiori* it is liable, if the cost has been paid.

The decree of the court below is, therefore, in each case,

*Affirmed.*

MR. JUSTICE FIELD dissenting.

I am unable to concur with my associates in affirming the judgment of the Supreme Court of Nevada in this case, and will state as briefly as possible the grounds of my dissent.

The case comes before us on a writ of error to the Supreme Court of that State, alleging error in its decision against the Central Pacific Railroad Company, a corporation organized under the laws of California, but doing business and possessed of property, real and personal, in Nevada.

That State commenced an action in December, 1888, in the district court for Lander county in Nevada, against the Central Pacific Railroad Company, and certain described real estate and improvements thereon, situated within the State, belonging to that company. By the laws of Nevada, an action against a railroad company doing business and holding property therein, may be brought against the company to recover a money judgment against it, and at the same time against its property to obtain a judgment establishing a lien thereon for the amount recovered against the company.

The question in the present case is whether the lands taxed by the State are, in fact, subject to taxation. It does not appear to me that they are thus subject, for they are not free

from the lien of the government or from its control and disposition. Until they are thus freed and the right of the Central Pacific Railroad Company to the lands has accrued beyond question, they are not in my judgment open to taxation as the property of such company. So long as the government retains, as it now does, the legal title to the lands, and the control thereof with a substantial interest therein, the lands cannot properly be treated as private property and be subjected to taxation on that account. By the acts of Congress of July 1, 1862, and July 2, 1864, the Central Pacific Railroad Company was invested with similar powers, conferred by them upon the Union Pacific Railroad Company, and like grants of land were made to it to aid in the construction of its railroad and telegraph lines, and it was subjected to the same conditions. The property taxed by Nevada as that of the Central Pacific Railroad Company was granted to it by Congress as above stated, and consists largely of mineral lands. But a joint resolution was passed by Congress in January, 1864, declaring "that no act passed at the first session of the Thirty-eighth Congress, [that being of the year 1864,] granting lands to States or corporations to aid in the construction of roads or for other purposes, or to extend the time of grants heretofore made, shall be so construed as to embrace mineral lands, which in all cases shall be and are reserved exclusively to the United States, unless otherwise specially provided in the act or acts making the grants." 13 Stat. 567. Attempts to subject lands, thus reserved and controlled by the government, to taxation on private account until the government is released of all interest in the property appears to me only as a wanton invasion upon its rights. I therefore dissent from the judgment herein, and from the opinion of the court pronouncing it.

MR. JUSTICE BREWER and MR. JUSTICE PECKHAM took no part in the consideration and decision of these cases.