283 P.2d 227

**AZTEC LAND AND CATTLE COMPANY, a corporation, Appellant,**

v.

**NAVAJO REALTY COMPANY, a corporation; Olds Brothers Lumber Company, a corporation; Herman Sughrue, d/b/a Winslow Drug Company; Bert Hawkins, d/b/a Hawkins Texaco Super Service Station; and E. R. Crozier, Appellees.**

**No. 5975.**

Supreme Court of Arizona.

April 21, 1955.

56

McQuatters & Stevenson, Flagstaff, for appellant.

Ross F. Jones, Atty. Gen., P. H. Brooks, Winslow, Sp. Counsel, Alfred B. Carr, Asst. Atty. Gen., for appellees.

UDALL, Justice.

This is an appeal by Aztec Land and Cattle Company, Ltd., a corporation (defendant in the court below and hereinafter referred to as Aztec), from a summary judgment holding certain of its lands to be subject to taxation. The suit was initiated by a group of taxpayers of Navajo County, hereinafter termed plaintiffs, who sought a writ of mandamus to require Aztec to supply the county assessor with a list of lands owned by it in Navajo County, and to direct the assessor (who with other public officials of the county were named as parties defendant) to place said lands on the assessment roll and to assess the same.

An alternative writ of mandamus was issued. Aztec filed a motion to dismiss, which was denied, and then a verified answer to the complaint. The public officials named as defendants also filed answers which we need not analyze as they are not parties to this appeal. Plaintiffs then filed a reply to the answer of all defendants and shortly thereafter followed with a motion for summary judgment supported by three documentary exhibits to which we will later refer. Aztec filed a memorandum in opposition to said motion together with the supporting affidavit of its vice-president, T. W. Cabeen. Other memoranda, affidavits and exhibits were filed by the respective parties. After the matter had been orally argued and fully briefed the trial court rendered a written decision granting plaintiffs' motion for summary judgment. A formal written judgment was later entered which directed

the issuance of peremptory writs of mandamus to Aztec and the county assessor. Aztec then filed a motion to vacate judgment and also a motion to correct the judgment and the peremptory writs of mandamus, which were by the court denied. This appeal followed.

While a challenge is made as to the sufficiency of the complaint to state a claim upon which relief can be granted, the principal assignment of error is that it was error to grant plaintiffs' motion for summary judgment for the reason that the pleadings and entire record before the trial court revealed the existence of genuine issues of material fact between the parties. Plaintiffs challenge the correctness of this statement.

■ It is well established that in determining such motion, made under Rule 56, Rules Civ.Proc. (now appearing as Sec. 21–1210 et seq., A.C.A. 1939), the court does not try issues of fact but only determines whether the same are genuine and in good faith disputed. See, Malta v. Phoenix Title & Trust Co., 76 Ariz. 116, 259 P.2d 554, and Stevens v. Anderson, 75 Ariz. 331, 256 P.2d 712, together with the cases therein cited as to when a motion for summary judgment should or should not be granted.

While there are certain minor matters, hereinafter discussed, which Aztec contends are issues to be tried, the principal fact issue which Aztec claims defeats plaintiffs' right to summary judgment concerns the ownership of the lands in question. The complaint alleges that Aztec is the owner

thereof, which the latter in its answer denies, asserting that the record title is in the United States of America; however, in its reply plaintiffs allege that the ownership of these "indemnity strip" lands as between the government and Aztec was adjudicated in the cases of Krug v. Santa Fe Pac. R. Co., 81 U.S.App.D.C. 288, 158 F.2d 317, and more particularly in Chapman v. Santa Fe Pac. R. Co., 90 U.S.App.D.C. 34, 198 F.2d 498, certiorari denied 343 U.S. 964, 72 S.Ct. 1058, 96 L.Ed. 1361. Hence it is plaintiffs' position that the question of ownership is one of law which the trial court was empowered to decide on motion for summary judgment. A determination of whose position is correct is, we believe, the crux of the whole case.

Unquestionably, it was the impact of the decision in the Chapman case that gave rise to the instant suit to place on the tax rolls of Navajo County the lands here in question. These lands may be generally described as 62 odd-numbered sections, comprising some 37,758.56 acres, lying in five townships (i. e., T. 13 N., R. 15 E.; Twps. 12 N., Ranges 16 and 17 E.; T. 10 N., R. 20 E.; and T. 11 N., R. 21 E.) located in the Pinedale and Heber areas on the Sitgreaves National Forest, and all are in what is known as the "indemnity strip". T. W. Cabeen, vice-president of Aztec, correctly states in his affidavit that claim to said lands has "been in dispute, controversy and litigation from 1886 to 1952", that is until June 2, 1952, when the Supreme Court of the United

States denied certiorari in the Chapman case. See 72 S.Ct. 1058.

In order to resolve the problem presented as to ownership, etc., it is necessary that we state the facts leading up to the Chapman case as well as analyzing the holding of that decision, and in addition to set forth other matters that have a particular bearing on the instant controversy.

Inasmuch as reported decisions in the Krug and Chapman cases, supra, recite in great detail the history of the title to the Aztec lands, we shall do no more than succinctly outline—in chronological order—the various steps taken as they affect the lands here in question:

(1) Congress, by the Act of July 27, 1866, 14 Stat. 296, to aid in the construction of a railroad to the Pacific coast, granted to the Atlantic & Pacific Railroad Company the odd-numbered sections of public lands for 40 miles either side of its projected line; this area is described as the "place" limits. Within an additional 10-mile strip known as the "indemnity" limits, the Act granted the right to select sufficient lands to make up any deficiency in the "place" limits arising from homestead entries, pre-emptions, mineral lands, etc.

(2) On March 12, 1872 the Atlantic & Pacific filed with the Secretary of the Interior a map of definite location, and thereafter the railroad was constructed.

(3) On February 3, 1886 the Atlantic & Pacific contracted to sell 1,000,000 acres to Aztec.

(4) By Act of Congress dated March 3, 1897, 29 Stat. 622, the Santa Fe Pacific Railroad Company (hereinafter called Santa Fe) was created.

(5) On June 2, 1897 a Special Master, acting in behalf of Atlantic-Pacific, deeded all of its right and interest in and to said lands to the Santa Fe, which deed was recorded with the county recorder of Navajo County.

(6) On August 17, 1898, by executive proclamation, some 98,690.83 unsurveyed acres, lying in the "indemnity" strip, claimed by Aztec were withdrawn for a forest reserve.

(7) On November 7, 1905, Santa Fe conveyed to Aztec the balance of the lands due it under its original contract. This deed was recorded in Navajo County and specifically describes all of the lands involved in this suit.

(8) By October 14, 1939, all of the lands in question had been surveyed.

(9) On June 26, 1942, the Santa Fe filed selections in the form prescribed by the Secretary of the Interior of the land previously sold and conveyed to Aztec. Those selections were denied on the ground that the land had not been identified so that the railroad acquired any interest in specific lands which it could convey.

(10) On January 14, 1949, Federal District Judge Holtzoff, in the trial of the Chapman case, found as a fact:

"9. Prior to and at the time of the said withdrawal, (Forest Reserve) and at all times thereafter to and including 1940, the unsatisfied losses in the place limits of the grant exceeded the surveyed lands within the indemnity limits of the grant available for selection, and to that extent there was and has been a deficiency in the grant since some time prior to August 17, 1898, of not less than 100,000 acres."

A careful reading of the decision of the United States Circuit Court of Appeal, District of Columbia Circuit, in the Chapman case, 198 F.2d 498, 501, makes crystal clear certain points, viz.:

(1) The executive proclamation of 1898 purportedly withdrawing for inclusion in a national forest the 98,690.83 acres of "indemnity" lands (the acreages in question here being a part thereof) was of no legal significance as it did not impair or in any way defeat the rights of the Santa Fe to such lands.

(2) As to the matter of ownership in answer to the contention of the Secretary of the Interior that irrespective of the existence of a deficiency, Santa Fe could have acquired no interest in the lands conveyed to Aztec without a formal selection, the Circuit Court quoting from the Krug decision, stated:

"'While it is true that, as a general rule, selection is necessary to vest any right to specific indemnity land in the grantee, the Supreme Court has long recognized an exception where there is a deficiency of indemnity land to satisfy losses in place.' [158 F.2d 317, 320].

"This was in effect what the Supreme Court held in United States v. Northern Pacific Ry. Co., supra, [256 U.S. 51, 41 S.Ct. 439, 65 L.Ed. 825]."

The opinion then went on to say:

"In the United States v. Northern Pacific Ry. Co. case, supra, Mr. Justice Van Devanter said, in effect, that the government could not deprive these land grant railroads of their rights to 'place' and 'indemnity' lands. And that is in effect what the government is trying to do here. At first no surveys were made which would have enabled the Santa Fe to make selections. Then the specific 98,690.83 acres and other lands were withdrawn as part of a forest reserve. Consequently, no selection could have been made until after the decision in the Forest Reserve case, United States v. Northern Pacific Ry. Co., supra, [256 U.S. 51, 66–67, 41 S.Ct. 439, 65 L.Ed. 825].

"It should be remembered that the railroad must select indemnity lands under the direction of the Secretary of the Interior, and that officer has consistently ruled no selection can be made or approved until the lands in question are surveyed. The government cannot take advantage of its own wrong or at least its own failure to

act. We hold that the right of selection vested at the earliest time there was a deficiency of indemnity lands to satisfy losses in place. The government, by additional surveys could not defeat the Santa Fe's right of selection. The District Court found as a fact that a deficiency did in fact continue up to 1940 and *consequently no selection was necessary to vest title in the Santa Fe.* This finding was adequately supported by the evidence and in this conclusion we concur.

"If there was a deficiency in the indemnity lands to satisfy losses in place, and we so hold, then no selection was necessary by Santa Fe to vest this right in the railroad. This was our decision when this case was before this court the last time, Krug v. Santa Fe Pacific Railroad Co., supra, and we affirm our conclusion there." (Emphasis supplied.)

(3) Upon the whole record before it the court in effect declared that even though the legal title remained in the United States, it was holding this title in trust for Aztec, hence the issuance of patents therefor became a mere ministerial duty of the Secretary of the Interior or of those under him.

■ Considering the pleadings, affidavits and exhibits in the instant case, as well as the federal decisions in the Chapman and Krug cases, which have to do with the particular lands here involved,

can it be said that there is any genuine issue as to any material facts or was the trial court correct in its holding that plaintiff was entitled to judgment as a matter of law? Let us test each of the purported factual issues which Aztec claims to exist.

(a) As to the matter of ownership of the lands in question: it is our firm opinion that the Chapman decision, properly construed, unequivocally establishes, as a matter of law, Aztec to be the equitable owner of said realty.

Aztec strongly relies upon the following pronouncement made by this court in the case of Aztec Land & Cattle Co. v. County of Navajo, 1905, 9 Ariz. 308, 80 P. 318:

"It is settled that no interest is acquired by the selection of lieu lands, such as are described in the complaint, which will subject them to local taxation, until the approval of the selection by the secretary of the interior. Wisconsin Central Ry. Co. v. Price County, 133 U.S. 496, 10 S.Ct. 341, 33 L.Ed. 687; * * *."

There are factual differences that distinguish both of these cases. Furthermore they are inapplicable to the instant situation because the rights between Aztec and the United States have—as we have pointed out—been fully adjudicated by the Krug and Chapman decisions, supra.

(b) The claim that the executive order establishing a forest reserve, not having been formally revoked, created a question of fact is wholly without merit as the

court's decree nullified it as to these lands. The invalidity of such a withdrawal was first established in the case of United States v. Northern Pac. Ry. Co., 256 U.S. 51, 41 S.Ct. 439, 65 L.Ed. 825.

(c) No factual question is raised by Aztec's assertion that the lands in question were then and for many years prior thereto had been under the supervision and control of the United States and its agencies. From the standpoint of taxation this becomes unimportant. Chapter 73 of A.C.A. 1939 entitled "Taxation", and more particularly article 2 thereof, dealing with "property subject to taxation", specifically defines in section 73–202 the term "real estate" to "* * * mean and include the ownership of, or claim to, or possession of, or right of possession to, any land * *", and the law further provides that it is the duty of the county assessor to assess property of this character to its owners.

(d) Aztec asserts the right of plaintiffs to maintain the action is a fact in issue, the allegations of the complaint that they are taxpayers and property owners being denied in the answer. A similar contention was raised in the case of Trico Electric Cooperative v. Ralston, 67 Ariz. 358, 196 P.2d 470, 476, and what was there said is applicable here:

"* * * Denials that plaintiffs were land owners, customers of and dependent upon Eloy Company for electric energy and water are only addressed to question of plaintiffs' capacity to sue. This issue was not properly presented. '* * * When a party desires to raise an issue as to * * * the capacity of any party to sue or be sued * * * he shall do so by specific negative averment, which shall include such supporting particulars as are peculiarly within the pleader's knowledge.' Section 21–413, A.C.A. 1939."

(e) Aztec also contends that its denial of plaintiffs' allegations of demand upon it to list, and the refusal of the county assessor to place the lands upon the tax rolls and assess the same, raises an issue of fact. However, the answer of defendant assessor admits a demand made upon him, and as we are of the opinion, as will be hereafter developed, that Aztec cannot by writ of mandamus be compelled to list the lands for taxation, therefore, whether demand was made or not, this issue, as raised by the pleadings, becomes immaterial.

(f) Finally it is urged that Mr. Cabeen's affidavit raises an additional question of fact for determination, i. e., that this action was premature in that the land was not taxable until the Bureau of Land Management had made a determination as to the mineral character of said lands and the matter of adverse claims had been settled by the issuance of patents to Aztec. We do not believe there is any merit to this contention for, as has been shown, the Circuit Court in the Chapman case held that

issuance of the patents by the Secretary to such lands was merely a ministerial act. For a statement of the applicable rule of law see, 73 C.J.S., Public Lands, § 189. Moreover, the Congress of the United States has answered the question of whether the issuance of a patent is a pre-requisite to taxing the lands. Sec. 882 Title 43 U.S.C.A. reads:

> "*Surveyed Lands Taxable Notwithstanding Lien; provisos.* No lands granted to any railroad corporation by any Act of Congress shall be exempt from taxation by States, Territories, and municipal corporations on account of the lien of the United States upon the same for the cost of surveying, selecting, and conveying the same, or because no patent has been issued therefor; * * *." July 10, 1886, c. 764, § 1, 24 Stat. 143.

The contention here made was rejected by the Supreme Court of the United States in the case of Central Pacific R. Co. v. State of Nevada, 162 U.S. 512, 16 S.Ct. 885, 886, 40 L.Ed. 1057, where the court said:

> "* * * although lands sold by the United States may be taxed before the government has parted with the legal title by issuing the patent, this principle was to be understood as applicable only to cases where the right to the patent is complete, and the equitable title fully vested, * * *."

and as to the mineral character the court went on to say:

> "2. It is further claimed that no lands granted to this road can be taxed prior to the issue of the patent, because the grant excludes mineral lands,—not only minerals but mineral lands; that the right and power to ascertain which of the lands are mineral and which nonmineral is vested exclusively in the officers of the government, and can be proved only by the issue of a patent, as held by this court in Barden v. Northern P. R. Co., 154 U.S. 288, 14 S.Ct. 1030 [38 L.Ed. 992]. * * *"
>
> *       *       *       *       *       *
>
> "* * * The possibility, however, that minerals might be discovered upon certain sections of these lands, as to which the title of the railway company might be defeasible, would not impair their title to the great bulk of the grant, or enable the company with respect thereto to evade its just obligations to the state. Should the company disclaim a right to the possession of any portion of these lands by reason of the discovery of minerals thereon, there would remain no right to tax them under the statutes of Nevada; but so long as the company asserts a possessory claim to them, it implies a corresponding obligation to pay the taxes upon them. State v. Central P. R. Co., 20 Nev. 372, 22 P. 237."

As to adverse claims arising from lands that had been homesteaded or preempted within the indemnity strip under public land laws during the period 1886–

1952, it is to be noted from a certificate of the assessor appearing in the files that all such tracts which were assessed to others at the time the instant suit was filed were not being duplicated on Aztec's assessment and the judgment and peremptory writ so provide. Hence we believe, therefore, that it became unimportant that the usual processing of claims preparatory to the issuance of patents still remained to be done as this could not defeat the State's right to tax the property. Central Pacific Railroad Co. v. State of Nevada, supra.

As proof of Aztec's fear that patents would not be forthcoming was more fanciful than real was the admission made at time of oral argument that a short time prior thereto the first of these patents, covering some 5,000 acres, had been received.

In support of its attack upon the sufficiency of the complaint to state a claim for relief, Aztec sets forth the following proposition of law:

> "A complaint should be dismissed where it appears on its face that the statutory period for the performance of the duties sought to be enforced against the defendants had expired, or where the statute shows that the defendants are not subject to an action in mandamus."

Chapter 73, A.C.A.1939, provides in detail the method whereby property shall be placed upon the tax rolls and assessment made. Under its provisions, the duty to make such assessments devolves upon different officials at different times during the year, viz.: the county assessor, section 73–402, the county board of supervisors, section 73–418, the state tax commission, section 73–420, and county treasurer, section 73–704. However, throughout the year omitted property that is escaping taxation may always find its way onto the tax rolls through the action of one or more of these various officials. See, State Tax Comm. v. Board of Supervisors, 43 Ariz. 156, 29 P.2d 733.

Aztec contends that when the complaint was filed on July 13, 1953 and service had, neither the assessor nor the county supervisors could place property upon the roll without an order from the state tax commission (not a party to the action) and hence the former then had no duty, performance of which could be compelled by mandamus. However, we are of the opinion the time when the judgment was entered controls. At that time (March 22, 1954) the duty and authority to list lands for taxation rested upon the county assessor, section 73–402, supra, and to him the peremptory writ was properly directed. Prior to judgment the action was dismissed and alternative writ of mandamus quashed as to the county treasurer and the board of supervisors.

It is next contended the complaint should have been dismissed as to Aztec because it had no "duty resulting from an office, trust or station", and it was therefore not subject to a mandamus action. We

cannot agree with this contention. The law is stated thus in 35 Am.Jur., Mandamus, section 327:

> "A mandamus proceeding is properly directed against the officer, body, corporation, or person whose duty it is to perform the act sought to be enforced. Technically, such party is the only necessary party respondent or defendant; therefore, those whose co-operation is not needed to secure the end sought need not be joined. Generally, however, *all those who will be affected by the judgment should be made parties and may be brought in or intervene.* Thus, *when mandamus is invoked in a case relating to real property, all persons having an interest in the property must be made parties to the proceeding * * *."* (Emphasis supplied)

Further, the following appears in 55 C.J.S., Mandamus, § 253:

> "As a general rule all persons or parties having an interest in the subject matter of a mandamus proceeding, particularly *those individuals or corporations who have a special legal interest therein and whose rights may be affected or will be collaterally determined by a judgment awarding the writ, may properly be joined as parties* respondent or defendant * * * although their interest may be slight, and * * * they are usually required to be so joined; and *the fact that the performance of no duty is asked of them is of no importance. * * *"* (Emphasis supplied.)

Obviously, the judgment awarding the writ affected the legal interests of Aztec in the subject lands, and therefore it was properly before the court, and the propriety of subjecting these lands to taxation could be determined by this method.

■ There is a dearth of authority upon the question as to whether a writ of mandamus will issue to compel a private corporation to list its property for taxation as required by statute. The following statement appears in 34 Am.Jur., Mandamus, section 96:

> "* * * it is held in regard to the return of corporate property for taxation that if the statutes have provided another adequate remedy, in case of a non-return of its property by a corporation, mandamus will not lie to compel it to make a return, although it is recognized that if no remedy has been provided for by the statutes, in case of a failure to make the return, mandamus would lie to compel a return."

The only case cited as authority for this statement is Louisville & N. A. R. Co. v. State ex rel. McCarty, 25 Ind. 177, 87 Am. Dec. 358, wherein the court stated:

> "* * * If it were not provided by statute that, upon failure of the railroad company to file such statement within the time required by law, the auditor of the county shall proceed to

make the same, a *mandamus* would doubtless lie to compel the officers of the railroad to furnish the list after the time had expired; but the rule is well established that *mandamus* will not lie where the statute has expressly provided another adequate remedy. Upon the failure of the appellant to comply with the law, it became the duty of the auditor of the proper county to prepare the statement, and the auditor of state could look only to him. * * *"

From this it follows the provisions of our statute are determinative in the instant case. Section 73–402, A.C.A.1939, provides in part:

"* * * If any person shall neglect or refuse on demand, or fail without demand of the assessor or his deputy, to give * * * the list required * * * the assessor shall fill out a list for such person * * *."

It seems obvious that the legislature has provided an adequate means whereby property which is not listed by a taxpayer shall be placed upon the rolls for taxation. It follows that a writ of mandamus directed to the taxpayer is not necessary to accomplish this end, and Aztec, though a proper party to the action, it having rights determined thereby, should not have been directed to peremptorily list its property for taxation.

There are other minor claimed errors that we shall not discuss, as to do so would unduly extend this already lengthy opinion, suffice it to say that all such matters have been carefully considered and found to be without merit.

That portion of the judgment directing a peremptory writ of mandamus issue to Aztec, requiring it to list that portion of the lands described therein which it claims or owns, is ordered stricken and the peremptory writ issued pursuant thereto to Aztec is ordered quashed; in all other respects the judgment of the trial court is affirmed.

LA PRADE, C. J., and PHELPS, WINDES and STRUCKMEYER, JJ., concur.