NORTHERN PAC. R. CO. v. WRIGHT, County Treasurer.

(Circuit Court of Appeals, Ninth Circuit. January 16, 1893.)

No. 59.

PUBLIC LANDS—RAILROAD GRANTS—STATE TAXATION.

The grant of lands to the Northern Pacific Railroad Company under Act July 2, 1864, (13 St. at Large, p. 365,) was a present grant, which attached to the specific sections as they became capable of identification by the definite location of the road; and upon a report by the government surveyors that the lands surveyed are nonmineral such lands become subject to state taxation, although not segregated from the public domain, and although the land commissioner refuses to issue patents therefor until further satisfied that the lands are in fact nonmineral. 51 Fed. Rep. 68, affirmed.

Appeal from the Circuit Court of the United States for the District of Montana.

In Equity. Bill by the Northern Pacific Railroad Company against F. E. Wright, treasurer of Fergus county, Mont., to enjoin the collection of taxes. A demurrer to the bill was sustained, (51 Fed. Rep. 68,) and a decree entered dismissing the same. Complainants appeal. Affirmed.

Fred M. Dudley, for appellant.
H. J. Haskell, for appellee.

Before McKENNA and GILBERT, Circuit Judges, and HAWLEY, District Judge.

HAWLEY, District Judge. This is an appeal from an order and judgment of the circuit court for the district of Montana sustaining a demurrer to complainant's bill, which was brought against the county treasurer of Fergus county, Mont., to obtain a decree that the assessments and taxes levied for the year 1891 upon certain lands granted to complainant by the act of congress approved July 2, 1864, entitled "An act granting lands to aid in the construction of a railroad and telegraph line from Lake Superior to Puget sound, on the Pacific coast, by the northern route," (13 U. S. St. 365,) were illegal, and constitute a cloud upon complainant's title to said land, and to restrain the treasurer from selling said land for said taxes. Railroad Co. v. Wright, 51 Fed. Rep. 68.

The bill alleges, among other things, that the lands in question were within the limits of the grant; that the complainant's railroad has been completed and accepted; but the commissioner of the general land office has refused to' issue patents to complainant for said lands, as required by section 4 of the act, because complainant has failed and refused to file with the commissioner affidavits showing the nonmineral character of the land; that the

question as to whether said lands passed to complainant is now pending and undecided before said commissioner of the general land office; that said lands have been surveyed by United States surveyors, and have been reported by them to be nonmineral lands; that complainant · has prepared and filed lists in the United States district land offices, claiming the said lands as a portion of the lands granted to it by said act; that said lists were filed, accepted, and approved by the United States land officers, and by them transmitted to the commissioner of the general land ·office; that the commissioner has required complainant to file in the general land office affidavits that the lands are nonmineral, and has refused to approve or certify for patent said lists, until such affidavits are filed; that none of said lands have ever been certified or patented to complainant; that neither the government of the United States nor its agents or officers have ever determined what specific lands in the state of Montana passed to complainant by virtue of said grant; that complainant has not, nor has any one in its behalf, filed any affidavit by persons having knowledge of the mineral or nonmineral character of said lands; that the United States still holds the said lists suspended and unapproved for the reason that it is claimed that said lands may be mineral in character, and, as such, excepted from the grant; that the lands granted to complainant have never been segregated from the public lands, and have never been identified, and the boundaries of the specific lands in Montana, so granted, have never been ascertained or determined.

Counsel for appellant assails the decision rendered by the circuit court, and argues at great length, from several different standpoints, to the effect that the averments of the bill clearly show that all the facts necessary to determine whether the lands in question are within the description contained in the act of congress have never been ascertained; that they cannot be identified as lands coming within the provisions of the act, and have not been segregated from the public domain; that until such time as they are fully defined and segregated from the public domain the lands cannot be taxed by the state; that the lands are not taxable until the United States ceases to hold or claim any such interest in them as to justify the withholding of patents therefor; that they are not taxable while there remains any duty unperformed by the United States or its officers of determining the facts upon the existence of which depends appellant's right to have patents issued to it for said lands; that the determination of such facts is necessarily a condition precedent to the issuance of such patents; that the lands are not taxable until appellant has procured and filed affidavits of their nonmineral character in the interior department of the government, if the officers of that department have any authority to demand such affidavits; and, finally, that the lands are subject to exploration and location as mineral lands, and for this reason are not taxable. In support of this argument counsel cites a vast number of authorities, state and national, including numerous rulings made by the interior department. The sum and substance of the entire argument made

by counsel is that appellant is the owner of the absolute title to all the lands granted by the act of congress for every purpose except as to the right of taxation by the states.

It is conceded by both parties that the words contained in the act, "that there be and is hereby granted," are words of absolute donation, and import a grant in praesenti, and are sufficient to vest a present title in the grantee, and such have been the uniform decisions of the courts with reference to the act in question and other similar acts granting lands to other railroads. Railroad Co. v. Smith, 9 Wall. 95; Schulenberg v. Harriman, 21 Wall. 44; Leavenworth, L. & G. R. Co. v. U. S., 92 U. S. 733; Missouri, K. & T. R. Co. v. Kansas P. R. Co., 97 U. S. 491; Railroad Co. v. Baldwin, 103 U. S. 426; Wright v. Roseberry, 121 U. S. 488, 7 Sup. Ct. Rep. 985; Wisconsin Cent. R. Co. v. Price County, 133 U. S. 509, 10 Sup. Ct. Rep. 341; St. Paul & P. R. Co. v. Northern Pac. R. Co., 139 U. S. 1, 11 Sup. Ct. Rep. 389; Deseret Salt Co. v. Tarpey, 142 U. S. 241, 12 Sup. Ct. Rep. 158.

The title of appellant to the odd sections of land conferred by the act was at first an imperfect one, because, as is substantially stated in all of the decisions above cited, until the lands were identified by the definite location of appellant's railroad, it could not be known what specific tracts of land would be embraced by such sections. Until such a location was made the grant was a float. But when the route of the railroad was definitely fixed the odd sections granted became certain, and the title, which was previously imperfect, acquired precision, and became attached to such sections, and took effect as of the date of the grant; and to all such lands appellant had an indefeasible right or title, and was entitled to a patent thereto, if not mineral land excluded from the operation of the act, or "not reserved, sold, granted, or otherwise appropriated, and free from pre-emption, or other claims or rights," as specified in section 3 of the granting act. The issuance of a patent to such lands was not, therefore, essential to the title of appellant to the lands in controversy here, although it would undoubtedly have been of some service to it. From the averments of the bill it appears that the line of appellant's road was definitely fixed on the 6th of July, 1882, long prior to the assessment and levy of the taxes on the lands. It is specifically alleged in the bill that the lands are agricultural, nonmineral lands, and that no mineral of any character has been discovered thereon, and that the lands were "free from pre-emption or other claims or rights" on the 6th of July, 1882. It therefore necessarily follows that the lands in question were subject to assessment and levy for taxes, notwithstanding the fact that patents from the government of the United States had not been issued to appellant therefor, and that the proper officers of the government had refused to issue the patents until proof by affidavits was made that the lands were nonmineral. According to the allegations of the bill, the lands had been surveyed, their identification fixed, and their character as nonmineral lands ascertained. It seems to us too clear to require any extended discussion that appellant cannot, under the facts alleged in its bill, defeat the right

of the state to tax such lands by declining to make the proofs in the interior department of the government which would entitle it to a patent. Appellant, upon the principles of the law which we have announced as applicable to the facts stated in the bill, is the beneficial owner of the land, and, not being excluded from its enjoyment, it should not be permitted to use the title of the government to avoid its "just share of state taxation." Wisconsin Cent. R. Co. v. Price County, supra.

The judgment of the circuit court is affirmed.