MYERS, County Treasurer, v. NORTHERN PAC. RY. CO.

(Circuit Court of Appeals, Ninth Circuit.  October 4, 1897.)

No. 352.

1. STATE TAXATION OF RAILWAY LAND GRANTS—MINERAL LANDS.

Lands lying within the placed limits of the Northern Pacific Railroad grant, to which the company is seeking to perfect its title, and which are included in lists which have been approved and certified to by the register and receiver of the local land office, but to which the government refuses to issue patents pending an investigation as to whether the lands are mineral lands such as are reserved from the grant, are subject to taxation by the state.

2. SAME—MONTANA LAWS—ASSESSMENT.

There is nothing in the provisions of the Political Code of Montana relating to the assessment of property for taxation which can fairly be construed as depriving the state of authority to tax lands claimed by a railroad company under a congressional grant, though the issuance of patents thereto is suspended pending an investigation as to whether or not they are mineral lands so as to be excepted from the grant.

Appeal from the Circuit Court of the United States for the District of Montana.

C. B. Nolan, Atty. Gen., for appellant.

C. W. Bunn, for appellee.

Before ROSS and MORROW, Circuit Judges, and HAWLEY, District Judge.

HAWLEY, District Judge.   This is a suit in equity to enjoin appellant, the treasurer of Jefferson county, Mont., from selling the lands described in the bill of complaint for the nonpayment of state and county taxes, levied in the year 1894.   The circuit court granted an injunction as prayed for in the complaint.   The record contains a lengthy stipulation of facts, upon which the case was tried, which may be briefly summarized.   The lands in question are surveyed odd sections within the place limits of the grant to the Northern Pacific Railway Company by act of congress approved July 2, 1864 (13 Stat. 365).   The railroad company accepted the terms, conditions, and impositions of this act in due and regular form.   It definitely fixed the line of, and built, its road, and earned the grant.   Long prior to the assessment and tax levies herein complained of, it prepared, in the form prescribed by the secretary of the interior, and filed with the register and receiver of the United States district land office for the district in which said lands were situate, lists of lands claimed by the company as inuring to it under its grant, including, among others, the land described in the complaint, and at said time paid the register and receiver of the United States land office the fees to which they were, by reason of such listing and filing, entitled.   The lists were certified to, allowed and approved by, the register and receiver of the local land office.   These lists, including the lands described in the complaint, had not, at the time of the assessments and tax levies complained of, and have not yet, been adjusted in the office of the commissioner of the general land office.   The various di-

visions in the commissioner's office have not yet examined or passed upon said lists, and it has not yet been determined in said office what lands are within the terms of the grant to said company, and none of said described lands have been certified by the commissioner to the secretary of the interior, or have been patented by the United States to the railroad company, and the question whether said lands are mineral or nonmineral in character has not yet been determined, and is now under investigation under the terms and provisions of the act of congress approved February 26, 1895, entitled "An act to provide for the examination and classification of certain mineral lands in the states of Montana and Idaho" (28 Stat. 683). The railroad company has such right, title, interest, and property in and to said lands as is conferred upon it by the act of congress approved July 2, 1864, and acts and joint resolutions of congress supplementary thereto and amendatory thereof, and no other. The delay, if any, in the identification of the lands, is not the result of any action, failure, or default on the part of the railroad company. On November 4, 1895, the secretary of the interior suspended the patenting of the lands until the mineral or nonmineral character of the lands selected by the company shall have been investigated, and definitely ascertained and adjudicated by proper proceedings, and until mineral claimants and the state of Montana shall have opportunity to be heard before the department on questions of law and fact. Under the act of February 26, 1895, three commissioners have been appointed to examine and classify the mineral lands in the Helena land district, including the lands described in the complaint. The commissioners commenced the examination and classification of lands in said district during the year 1895, and have since continued such examination and classification, and have examined and classified only a small portion of the lands described in the complaint.

In Barden v. Railroad Co., 154 U. S. 288, 14 Sup. Ct. 1030, the court held that, by the grant of public lands made to the Northern Pacific Railroad Company by the act of July 2, 1864 (13 Stat. 365, c. 217), all mineral lands other than iron or coal are excluded from its operation, whether known or unknown; and all such mineral lands, not otherwise specially provided in the act making the grant, are reserved exclusively to the United States, the company having the right to select unoccupied and unappropriated agricultural lands in odd sections, nearest to the line of the road in lieu thereof. The contention of the appellee is that under the general principles announced in that decision the railroad company is excluded by law from the possession of or dominion over the lands specified in the grant until it is finally determined by the government that it is not mineral land. It is true that the grant is only of nonmineral lands. All mineral lands are, by express language, "excluded from the operation of this act." Grants of like character have, however, always been construed as being in praesenti. In none of them were the mineral lands granted. Mineral lands were always reserved and excepted from the provisions of the grants. Prior to the decision in the Barden Case, there had been more or less discussion as to whether or not the railroad grants excluded mineral lands which, at the time of the passage of

the act, were not known to be mineral. This question was set at rest by the decision of the court in the Barden Case. Mr. Justice Field, speaking for the court, said:

"It seems to us as plain as language can make it that the intention of congress was to exclude from the grant actual mineral lands, whether known or unknown, and not merely such as were at the time known to be mineral. After the plaintiff had complied with all the conditions of the grant, performed every duty respecting it, and, among other things, that of definitely fixing the line of the route, its grant was still limited to odd sections which were not mineral at the time of the grant, and also to those which were not reserved, sold, granted, or otherwise appropriated, and were free from pre-emption and other claims or rights at the time the line of the road was definitely fixed; and was coupled with the condition that all mineral lands were excluded from its operation, and that, in lieu thereof, a like quantity of unoccupied and unappropriated agricultural lands, in odd sections, nearest to the line of the road, might be selected. There is, in our judgment, a fundamental mistake made by the plaintiff in the consideration of the grant. Mineral lands were not conveyed, but by the grant itself, and the subsequent resolution of congress cited, were specifically reserved to the United States, and excepted from the operations of the grant. Therefore they were not to be located at all, and if, in fact, located, they could not pass under the grant. Mineral lands being absolutely reserved from the inception of the grant, congress further provided that at the time of the location of the road other lands should be excepted, viz. those previously sold, reserved, or to which a homestead or pre-emption right had attached."

In that case it was contended that the construction which was finally given to the act by the court would prevent the states and territories from taxing the property of the company unless they could tax the whole property, mineral as well as agricultural lands. In reply to this contention the court said:

"We do not see why not. The authority to tax the property granted to the company did not give authority to tax the minerals, which were not granted. The property could be appraised without including any consideration of the minerals. The value of the property excluding the minerals could be as well estimated as its value including them. The property could be taxed for its value to the extent of the title which is of the land."

In Wisconsin Cent. R. Co. v. Price Co., 133 U. S. 496, 10 Sup. Ct. 341, upon which appellee principally relies, the court, after declaring that the lands within the original sections named in the grant to the railroad company had become the property of the railroad company, and were, therefore, taxable, held that the portion of the lands taxed which fell within the indemnity lands could not be taxed, because no title passed to the company until after the selections were made, and until the same were approved by the secretary of the interior. Why? Because his action in making the selection was not ministerial, but judicial. "He was required to determine, in the first place, whether there were any deficiencies in the land granted to the company which were to be supplied from indemnity lands; and, in the second place, whether the particular indemnity lands selected could be properly taken for those deficiencies. In order to reach a proper conclusion on these two questions, he had also to inquire and determine whether any lands in the place limits had been previously disposed of by the government, or whether any pre-emption or homestead rights had attached before the line of the road was definitely fixed. There could be no indemnity unless a loss was established. And in determining whether a particular selection could be taken as indem-

nity for the losses sustained, he was obliged to inquire into the condition of those indemnity lands, and determine whether or not any portion of them had been appropriated for any other purpose, and, if so, what portion had been thus appropriated, and what portion still remained. This action of the secretary was required, not merely as supervisory of the action of the agent of the state, but for the protection of the United States against an improper appropriation of their lands. Until the selections were approved, there were no selections in fact, only preliminary proceedings taken for that purpose, and the indemnity lands remained unaffected in their title. Until then, the lands which might be taken as indemnity were incapable of identification." Here the lands taxed are within the place limits of the grant. The route of the road had become definitely fixed. The lands granted were susceptible of identification, and the title attached to them, and took effect as of the date of the grant; the mineral lands being, as in all of the similar grants to railroad companies, excepted from its provisions. There is no averment, however, in the bill that any of such lands are mineral lands. On the contrary, it is alleged:

"That said lands, and each and every part thereof, were, prior to the attempted assessment and tax levies hereinafter referred to, surveyed by the United States, or under its authority, and were reported by the surveyors making such surveys to be agricultural lands and nonmineral in character, and as yet, so far as your orators have information, no minerals in quantities sufficient to add to the richness of said lands, or to justify expenditure for their extraction by any methods of mining now in use or invented, or known to exist, have been discovered in said lands."

This state of the facts brings the case within the rule announced in Wisconsin Cent. R. Co. v. Price Co., supra, as to the lands included in the grant, which were held to be taxable.

We had occasion in Railroad Co. v. Wright, 4 C. C. A. 193, 54 Fed. 67, to pass upon a similar question; the only substantial difference in the facts, so far as the present discussion is involved, being that in that case the bill alleged that the commissioner of the general land office had refused to issue patents to the railroad company for the lands granted, because the railroad company had failed and refused to file with the commissioner affidavits showing the nonmineral character of the land, while in the present case it is admitted that the railroad company and the receivers thereof have been at all times diligent and active in obtaining the adjustment of said grant, and in obtaining patents to said company for the granted lands, and have done everything in their means and power to obtain the final adjustment of the grant, and to obtain patents for the land described in the complaint. This difference in the facts makes no real distinction in the principles involved in this discussion. In that case substantially the same argument was made as in this. The court, referring to the argument then made, said:

"Counsel for appellant assails the decision rendered by the circuit court, and argues at great length, from several different standpoints, to the effect that the averments of the bill clearly show that all the facts necessary to determine whether the lands in question are within the description contained in the act of congress have never been ascertained; that they cannot be identified as lands coming within the provisions of the act, and have not been segregated

from the public domain; that until such time' as they are fully defined and segregated from the public domain the lands cannot be taxed by the state; that the lands are not taxable until the United States ceases to hold or claim any such interest in them as to justify the withholding of patents therefor; that they are not taxable while there remains any duty unperformed by the United States or its officers of determining the facts upon the existence of which depends appellant's right to have patents issued to it for said lands; that the determination of such facts is necessarily a condition precedent to the issuance of such patents; that the lands are not taxable until appellant has procured and filed affidavits of their nonmineral character in the interior department of the government, if the officers of that department have any authority to demand such affidavits; and, finally, that the lands are subject to exploration and location as mineral lands, and for this reason are not taxable. In support of this argument counsel cites a vast number of authorities, state and national, including numerous rulings made by the interior department. The sum and substance of the entire argument made by counsel is that appellant is the owner of the absolute title to all the lands granted by the act of congress for every purpose except as to the right of taxation by the states."

In Railroad Co. v. Patterson, 154 U. S. 130, 132, 14 Sup. Ct. 977, the court said:

"The ground upon which it was asserted that these lands were not subject to taxation was that they had not been identified as lands passing to the plaintiff under its grant, because the United States had refused to certify them, and held them suspended 'for the reason that it is claimed that such lands are mineral, and are excepted from the grant to the plaintiff.' It was said in Wisconsin Cent. R. Co. v. Price Co., 133 U. S. 496, 505, 10 Sup. Ct. 344, that 'he who has the right to property, and is not excluded from its enjoyment, shall not be permitted to use the legal title of the government to avoid his just share of state taxation'; and plaintiff does not state whether all or any part of the lands are mineral or nonmineral. If the legal or equitable title to the lands, or any of them, was in the plaintiff, then it was liable for the taxes on all or some of them; and the mere fact that the title might be in controversy would not appear in itself to furnish sufficient reason why plaintiff should not determine whether the lands or some of them were worth paying taxes on or not."

The court disposed of the case upon other grounds. But the language of the court, as quoted, is indicative of its views upon the question here involved, and is sufficiently expressive to justify a reference thereto in support of the right of the state to tax the lands.

In Central Pac. R. Co. v. Nevada, 162 U. S. 512, 16 Sup. Ct. 885, which is distinguishable from this case only upon the ground that there the state had levied the tax upon the possessory claim of the railroad company, while in this case it is claimed that it is not the interest of the company, but the land itself, that is assessed. But the identical point here raised was there argued and relied upon by the attorney for the railroad company, and was answered by the court as follows:

"It is further claimed that no lands granted to this road can be taxed prior to the issue of the patent, because the grant excludes mineral lands,—not only minerals, but mineral lands; that the right and power to ascertain which of the lands are mineral and which nonmineral is vested exclusively in the officers of the government, and can be proved only by the issue of a patent, as held by this court in Barden v. Railroad Co., 154 U. S. 288, 14 Sup. Ct. 1030. It is argued that, if the railroad company paid taxes upon these lands, it might never own or require them, and the tax would consequently be paid on property it never owned or could own; and that, upon the other hand, if the company should not pay the taxes, and the lands be sold under the judgment appealed from, the title to the lands, if the assessments were valid, would pass to the purchaser, whether they were mineral or not. * * * It is true that in the

Barden Case we held that mineral lands were excluded from the operation of the Pacific Railroad land grants whether such minerals were known or unknown at the date of the grant, because the statutes had excepted them in the most unequivocal terms; but nothing was said in that case to impugn the authority of the previous cases which had held that these grants were in praesenti of lands to be afterwards located. They became so located when they were surveyed. Then the grants attached to them subject to certain specified exceptions, one of which was that minerals should be discovered upon them before the issue of a patent, when, as to such lands, the title of the company failed. The possibility, however, that minerals might be discovered upon certain sections of these lands, as to which the title of the railroad company might be defeasible, would not impair their title to the great bulk of the grant, or enable the company, with respect thereto, to evade its just obligations to the state. Should the company disclaim a right to the possession of any portion of these lands by reason of the discovery of minerals thereon, there would remain no right to tax them under the statutes of Nevada; but, so long as the company asserts a possessory claim to them, it implies a corresponding obligation to pay the taxes upon them. State v. Central Pac. R. Co., 20 Nev. 372, 22 Pac. 237."

We have quoted thus extensively from the decisions of the United States courts for the purpose of showing that the questions raised and discussed in this case are neither new nor novel. The points raised are precisely the same as were raised in the cases before the decision in the Barden Case, and the decision in that case in no manner changes the rulings that had been previously made upon the same identical question. In fact, this is apparent from the language of the court itself in that case, heretofore quoted, in which it is expressly affirmed that, notwithstanding the views expressed as to the character of the grant, it would not in any manner interfere with the right of the state to tax the lands granted to the railroad company.

Appellee cites section 3697 of the Political Code of Montana, which provides for the assessment of land in subdivisions and by sections, and argues that such an assessment cannot be construed as an assessment of the interest of the railroad company therein. Section 3700 of the same Code provides that the assessor shall ascertain "all property in his county subject to taxation, * * * and must assess such property to the persons by whom it was owned or claimed, or in whose possession or control it was at 12 o'clock m. of the first Monday of March next preceding." Section 3670 provides that "all property in this state is subject to taxation," except as provided in section 3671. The lands in question do not come within any of the exceptions mentioned in section 3671, unless it is shown that they are the property of the United States. It is not so shown, unless we indulge in the presumption that they are mineral lands. This we are not authorized to do. All presumptions are directly to the contrary. In favor of taxation is the rule; exemption from taxation the exception. Mining Co. v. Kennon, 3 Mont. 35, 37. The term "property," in the Code, includes real estate; the term "real estate" includes "the possession of, claim to, ownership of, or right to the possession of, land." Section 3680. Possession with a claim of ownership is a subject of taxation, and imposes on the occupant the duty of paying the tax levied upon the property. Reily v. Lancaster, 39 Cal. 354, 356, and authorities there cited. The assessment was made in the manner required by law. . The regularity of all the acts of the assess-

ing and collecting officers is conceded. There is nothing in any of the statutory provisions of Montana which can fairly be construed as depriving the state of its authority to tax the property as the lands of the railroad company. In Railroad Co. v. McGinnis (N. D.) 61 N. W. 1032, 1034, the court, in passing upon a similar question, held that, if the railroad company was not the owner of the lands, and had not sufficient title to support the levy of the assessment, it could not and should not be allowed to question "the legality of the tax." The railroad company cannot complain of any injustice or hardship in being compelled to pay taxes on this land. It has as perfect and complete title thereto, subject only to the exceptions stated in the act, as if it had a patent thereto (as is clearly shown in Wisconsin Cent. R. Co. v. Price Co., supra); and, if any part or portion of the land is to be excluded from the grant because coming within any of the exceptions mentioned in the grant, then, by the express terms of the grant, the railroad company is entitled to select, with the approval of the secretary of the interior, an equal quantity of other land in lieu thereof. The act of February 26, 1895, does not contain any provisions which indicate any intention on the part of congress to relieve the lands granted from state taxation until such time as it may be finally settled what portions thereof, if any, are mineral lands.

It appears from the pleadings that appellee has executed mortgages upon this land, thereby asserting its ownership therein. It is admitted that it has all the right, title, and interest in the land as conferred upon it by the act of congress.

We are of opinion that the land is taxable. The railroad company, by virtue of its grant, has an indefeasible right or title thereto. The land has become the property of the railroad company in the sense that there is nothing to prevent its use and enjoyment by the company. It being the beneficial owner of the land, and being protected in its use and enjoyment, there is no substantial reason why it should not be compelled to pay taxes thereon. The argument that it may some time in the future be shown that some part thereof is mineral land is too remote, indefinite, and uncertain to be seriously considered by the court as a valid reason for refusing to enforce the right of taxation. Courts should deal with things as they are, without attempting to determine rights upon mere possibilities and speculations. The duty devolved upon the railroad company to affirmatively show that the lands taxed belong to the class which was excluded from its grant. In other words, the burden was upon the railroad company to show that the lands taxed were mineral lands. State v. Central Pac. R. Co., 20 Nev. 372, 383, 22 Pac. 237; Railroad Co. v. McGinnis (N. D.) 61 N. W. 1032, 1035. It should not be allowed to blow hot and cold; to say in one breath the lands are not mineral for the purpose of establishing its rights therein, and in the next breath to say that the lands may be mineral for the purpose of avoiding the payment of taxes thereon. The judgment and decree of the circuit court is reversed, and cause remanded, with instructions to dismiss the bill, and enter judgment in favor of appellant for his costs.